CROWDER STATE BANK v. AETNA POWDER CO. *et al.*

No. 3036.   Opinion Filed December 23, 1913.

Rehearing Denied February 3, 1914.

(138 Pac. 392.)

1. **BANKS AND BANKING** — Contract by Cashier — Liability of Bank—Estoppel.   Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires.

2. **CORPORATIONS**—Ultra Vires Contract—Estoppel.   It may be considered as settled law in this state to-day that, when a corporation goes outside of its legitimate business and makes a contract, and that contract is executed, and the corporation has received the benefits of the contract, the courts will not listen to a plea of ultra vires.

3. **SAME**—Action.   When suit is brought on an ultra vires contract against a corporation, the contract being evidenced by a written instrument, the action is not maintained by virtue of the written instrument, but on the implied contract of the corporation to return the property delivered by virtue thereof or to place the parties in status quo.   To maintain such an action is not to affirm, but to disaffirm, the original or unlawful contract.

4. **CORPORATIONS** — Powers — Contracts — "Ultra Vires."   There are many shades and distinctions of meaning of the term "ultra

vires," but in its primary sense it means beyond the scope and power of a corporation to perform under any circumstances or for any purpose.

(Syllabus by Robertson, C.)

*Error from County Court, Pittsburg County;*
*B. P. Hammond, Judge.*

Action by the Aetna Powder Company against the Crowder State Bank and another to recover money judgment. Judgment for plaintiff against the bank only, and the bank brings error. Affirmed.

*Robert N. McMillen,* for plaintiff in error.

*Wright & Boyd,* for defendant in error, Aetna Powder Co.

Opinion by ROBERTSON, C. In the year 1907 W. A. Lovejoy, then engaged as a contractor by the M., K. & T. Ry. Co., in Pittsburg county, Okla., being in need of powder and dynamite with which to prosecute his work, ordered a large quantity thereof from the Aetna Powder Company; the order was in writing, and at the bottom of the paper, and under the signature of Lovejoy, was the following:

"We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us.

"THE CROWDER STATE BANK,
"By J. L. HENDERSON, Cashier.

"Aug. 2, '07."

And on the reverse side of the order appears the words: "J. J. Burba, above guarantees account ———— of Crowder, I. T."

By virtue of said order and the indorsements thereon, as aforesaid, the Aetna Powder Company, on August 10, 1907, shipped Lovejoy powder and dynamite to the value of $189, and the same was received and used by him. On February 1, 1908, Lovejoy's employer, the M., K. & T. Ry. Co., issued its check to him for the sum of $3,275.87, and on March 2d thereafter another check for $1,243.02, in part payment of the work performed by him under his contract; both these checks were issued to Lovejoy subsequent to the order and shipment of the powder and dynamite, and were indorsed and deposited by him

with the plaintiff in error, the Crowder State Bank, and by it collected in the usual course of business. Notwithstanding said sum of $4,518.90 belonging to the defendant Lovejoy came into the possession of defendant bank subsequent to the giving of the order for the powder and dynamite, as aforesaid, with the indorsements of said bank, the said bank failed and refused to withhold the amount of the bill due the Aetna Powder Company, and failed and refused absolutely to apply $189 of said amount on the payment of said bill, which by its indorsement it was bound to do. Suit was instituted by the Aetna Powder Company against Lovejoy, the Crowder State Bank, and Burba for the recovery of the amount. No service was had on Lovejoy, and the suit proceeded against his codefendants and resulted in a judgment against the bank for the full amount. Burba recovered a judgment for his costs, the jury finding for him on the merits of the case. The bank brings this appeal and insists that there is error in the record in that: (1) Plaintiff's petition fails to state facts sufficient to constitute a cause of action. (2) The evidence fails to show a cause of action in favor of plaintiff and against defendant. (3) The evidence fails to show that plaintiff suffered any substantial damage by the failure of defendant bank to withhold the money from Lovejoy's account. (4) The court erred in giving instruction No. 3 to the jury. (5) The court erred in rendering judgment against defendant. (6) The court erred in overruling defendant bank's motion for new trial.

While the petition in error contains six separate assignments of error, it is evident that the principal question in the case is: The allegations of the petition and the proof show that the undertaking assumed by the bank was *ultra vires* and therefore not binding upon it.

The evidence clearly shows that Lovejoy, the contractor, was a customer of the bank; at times he had large deposits, while at other times he was overdrawn; at the time the powder and dynamite were ordered, August 2, 1907, it is not shown what the condition of his account was; on December 6, 1907, Mr. Hawley, manager of the Aetna Powder Company at St. Louis, wrote to the bank as follows:

"St. Louis, Mo., Dec. 6, 1907.

"Crowder State Bank, Crowder, Okla. — Gentlemen:    We hand you herewith statement of account against Mr. W. A. Lovejoy, Crowder, Oklahoma, amount of same $189.00, which is long past due, the account being dated August 10th.    When this order was given by Mr. Lovejoy you made a notation on the order saying that you would hold the amount of this bill out of funds due Mr. Lovejoy when same was received by you.    As we have not heard from Mr. Lovejoy for some time and are quite eager to close our books for the year, will you kindly send us a check for the amount if you have the funds on hand.    Very truly,

"The Aetna Powder Company,
. "B.                                          E. W. Hawley."

"Mr. Lovejoy is expecting his money every day now, and when paid will be attended to."

"Received Dec. 14, 1907.    Chicago."

The notation on the letter under Hawley's signature was made by Henderson, the cashier of defendant bank, and after making it he returned the letter to the powder company.

On January 28, 1908, Mr. Rodgers, the auditor of the powder company, wrote the bank the following letter:

"Chicago, January 28, 1908.

"Crowder State Bank, Crowder, Oklahoma.—Dear Sirs: On December 6th, we received a notation on the bottom of our letter of that date regarding our account against W. A. Lovejoy of your city, stating that payment would be forwarded to us in a few days as Mr. Lovejoy was expecting his money.    This is now almost sixty days ago and as the account is quite old we would thank you to advise us when we may expect payment.

"Very truly yours,

"The Aetna Powder Company,
"By J. H. Rodgers, Auditor."

This letter was received by the bank, and Mr. Henderson, the cashier, returned the same to the powder company at Chicago on February 2, 1908, with the following indorsement on the back (Record, p. 47):

"It is my understanding that Mr. Lovejoy will remit you just as soon as the Katy pays him his November estimates.    The Katy is about sixty days behind.    Expect settlement next week."

Mr. Hoyt, the salesman for the powder company, testified that he sold Lovejoy the powder and dynamite in August, 1907;

that Lovejoy signed the order in his presence; that Henderson, the cashier, signed the indorsement in his presence also. This is not denied.

Henderson, the cashier, testified that he indorsed the order as charged by the powder company; that he had made the notations on the letters above set out; that he did not call the attention of the board of directors to the fact that the powder company held the bank liable for the account; that he did not remember the circumstances transpiring at the time the order was signed, except that Mr. Lovejoy wanted some powder and that the powder company wanted the bank to pay them for it when the money came to Mr. Lovejoy; that the bank had an assignment of all of Lovejoy's money due him on his estimates and that he told the powder company that when the money came to the bank, if there was anything left after paying the bank, the powder company would be paid; that Lovejoy was then depositing his money in the bank, and that at the time he was in Crowder doing some construction work for the Katy Railway; that because Lovejoy wanted him to indorse the order he would do so to encourage him as much as he could; that he knew Lovejoy had the money coming to him; that the bank did what it could to suit Lovejoy's convenience; that the bank permitted Lovejoy to check out the balance of $1,421.64, which was to his credit on February 5, 1908; that the bank had its other indebtedness secured by assignment; that the bank knew the order had not been paid, but did not consider it had guaranteed the same. From his testimony it is further shown that Lovejoy on December 6, 1907, had a credit in the bank of $90.34; that on January 28, 1908, he had overdrawn $1,662.82; that on May 18, 1908, he closed his account with the bank; that the last time there was a credit balance to him was April 8, 1908, to the amount of $41.48; that on the day the order was made his balance was $171.14; that on February 5, 1908, he deposited $3,275.87; that at the time he made this last deposit he owed the bank $1,774.14, and that after making the deposit he had a credit balance of $1,425.64; that on the 4th day of April, 1908, his balance was $837.38.

The action in the court below proceeded apparently on the theory that the cause of action was predicated upon a written instrument and not for damage by reason of the breach of contract. Of this phase of the case we will deal later, but now, without enunciating any general rule, it will be sufficient for us to determine whether or not the facts, as stated, bring this case within the doctrine of *ultra vires* as relied upon by the bank. The plea of *ultra vires* as used herein is intended doubtless to mean that act of the cashier in guaranteeing payment of the account to the powder company without the knowledge, consent, or ratification of the board of directors. It is not used in its primary sense or meaning, as being beyond the scope of the powers of the corporation to perform it under any circumstances or for any purpose. There are many shades of meaning and distinction employed and understood by the term, but, as we use it here, it is meant thereby to challenge the authority of the cashier of defendant bank to bind the same as a guarantor without the knowledge or consent or ratification of the board of directors. Used in this sense, it becomes a matter of primary importance to ascertain at first whether or not the bank secured a benefit or a beneficial effect of the alleged contract. Ordinarily, where the bank or corporation secures a benefit or a beneficial effect from the contract, or when the contract is not plainly beyond the scope or power of the parties making it, the above principle cannot be invoked or relied upon. It is only in cases of ambiguity or vagueness or where the contract is doubtful in this respect that it can be applied. But if the contract complained of is one which clearly contemplates some act beneficial to the corporation, it will generally be upheld and the plea disregarded. 3 Thompson, Corporations, sec. 2116.

"Where the contract is auxiliary and beneficial to the main business for which a corporation is formed, although not within the exact scope of its powers, contracts will be upheld and the defense of *ultra vires* will not be permitted." (*Malone v. Lancaster,* 182 Pa. 309, 37 Atl. 932.)

In the case at bar it is clearly inferable from the record that the bank was interested in having Lovejoy perform his contract

with the railway company. It had his assignment of estimates and collected the amounts due him and permitted him to make overdrafts at certain times. Without powder and dynamite Lovejoy could not perform his contract with the railway, and, for the purpose of enabling him to do so, it became necessary that he have credit upon which to purchase the necessary instrumentalities with which he could successfully prosecute his work. For this purpose, and this alone, the bank, through its cashier, lent him aid, by indorsing as guarantor the written order for the powder. By the use of the powder he was enabled to perform his contract, and by performing his contract he was able to close his account at the bank without a loss to it. Banks are often permitted to go into other business in order to save a debt. Many courts hold that public policy requires that a bank should have broad powers in the exercise of the judgment of the officials in order to protect itself from losses, and again, that, although a corporation may exceed its powers by entering into contracts not permitted by its charter, nevertheless, if those contracts are not *malum in se,* the corporation itself cannot avoid them by pleading *ultra vires.* And it seems to us that, whether a contract is *ultra vires* or not, if the corporation has permitted its execution and allowed innocent parties to surrender property or other things of value thereunder without objection, and it is impossible to restore their *status quo* and at the same time itself receive and keep the benefits or beneficial effects, it will not then be heard to plead *ultra vires* or lack of authority of one of its principal officers to bind it in that particular respect.

"* * * It is now very well settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract, in good faith, has been fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract." (*Darst v. Gale,* 83 Ill. 141.)

"Corporations are presumed to contract within their powers. The doctrine of *ultra vires,* when invoked for or against a corporation, should not * * * prevail where it would defeat the ends of justice or work a legal wrong." (*Ohio, etc., Ry. Co. v. McCarthy,* 96 U. S. 258, 24 L. Ed. 693.)

"The doctrine of *ultra vires,* whether invoked for or against a corporation, is not favored in the law. It should never be ap-

plied where it will defeat the ends of justice, if such a result can be avoided." (*San Antonio v. Mehaffy,* 96 U. S. 312, 24 L. Ed. 817.)

"The plea of *ultra vires* will not be allowed to prevail, * * * when it will not advance justice, but, on the contrary, will accomplish a legal wrong." (*Lewis v. American S. & L. Association,* 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559.)

"A corporation cannot defend against a contract liability growing out of a business in which it is actually engaged on the ground that such business was done in excess of its corporate powers." (*Linkauf v. Lombard,* 137 N. Y. 417, 33 N. E. 472, 20 L. R. A. 48, 33 Am. St. Rep. 743.)

"In case of a transaction which is simply *ultra vires,* neither party will be heard to allege its invalidity while retaining its fruits. Limitation of the contractual power of a corporation does not prevent it from making restitution of money or property obtained under an unauthorized contract." (*Manchester & L. R. Co. v. Concord R. Co.,* 66 N. H. 100, 20 Atl. 383, 9 L. R. A. 689, 49 Am. St. Rep. 582.)

"It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which it retains." (Sedgwick on Statutes and Statutory Construction, p. 73.)

"And this is especially true where the contract has been executed and third parties have acquired rights on the faith of it." (29 Cyc. 52.)

"It may be considered as settled law today when a corporation goes outside of its legitimate business and makes a contract, and that contract is executed, and the corporation has received the benefits of the contract, the courts will never listen to a plea of *ultra vires.*" (29 Cyc. 52; *Holt v. Winfield Bank* [C. C.] 25 Fed. 812.)

"In cases of contracts upon which corporations could not be sued because they were *ultra vires,* the courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts to obtain justice, by the recovery of the property or the money specifically, or as money had and received to plaintiff's use." (*Salt Lake City v. Hollister,* 118 U. S. 263, 6 Sup. Ct. 1055, 30 L. Ed. 176.)

"The executed dealings of corporations must be allowed to stand for and against both parties, when the plainest rules of good faith so require." (*Parish v. Wheeler,* 22 N. Y. 509.)

"Where a corporation enters into a contract *ultra vires* and the other party, in reliance thereon and in execution thereof,

expends money, the corporation is liable on the contract, provided it be not in violation of its charter nor prohibited by law." (*State Board v. Citizens' St. Ry. Co.,* 47 Ind. 407, 17 Am. Rep. 702.)

"At the present time, the defense of *ultra vires* is very generally regarded by the courts as an ungracious and odious one. And it is very well settled that neither party to the contract can avail itself of such a defense when the contract has been fully performed by the other party, and he has received the full benefit of the performance of the contract. If an action cannot be brought directly on the contract, equity will grant relief, or an action in some other form will prevail." (29 Cyc. 46.)

"The modern rule has been well stated thus: If the act is one which is lawful in itself and not otherwise prohibited, is done for the purpose of serving corporate ends, and is reasonably tributary to the promotion of those ends in a substantial, and not in a remote and fanciful, sense, it may fairly be considered within the charter powers." (29 Cyc. 47.)

"To say that a corporation cannot sue or be sued upon an *ultra vires* arrangement is one thing; to say that it may retain the proceeds thereof which may have come into its possession, without making any compensation whatever to the person from whom it has obtained them, is something very different, and savors very much of an inducement to fraud." (Green's Brice's "Ultra Vires" [2d Amer. Ed.] 721.)

It may be urged that the instrument sued on was not a written contract, inasmuch as its execution was *ultra vires*. It is unnecessary to give consideration to this suggestion, further than to say that, even though the claim might 'not be upheld on the written contract because unlawful, nor according to its terms, yet it will be sustained upon the implied contract of the bank to return the property delivered by virtue thereof or to place the parties in *status quo*. This, it is conceded, cannot be done, because the powder has been used in the prosecution of that work which enabled the bank to protect itself as to Lovejoy, and which was the beneficial effect of the contract flowing to and accepted by the bank.

Thus it was said in *Central Transp. Co. v. Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, by Mr. Justice Gray:

"A contract *ultra vires* being unlawful and void, not because of its being in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between parties, so far as could be done consistently with adherence to law by permitting the property or money, parted with on faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

Inasmuch as the contract under consideration has, long prior to the commencement of this action, been fully executed and was of beneficial force and effect to the bank, and the bank, notwithstanding these facts, failed and refused to protect the powder company when it had the opportunity, it will not now be heard to urge the plea of *ultra vires* as relied upon in the court below.

The other questions presented by the record, in view of the foregoing conclusion, become immaterial, and no further consideration need be given them.

The judgment should be affirmed.

By the Court: It is so ordered.