## FIRST NAT. BANK IN COALGATE v. FIRST NAT. BANK OF ADA et al.

No. 17320.    Opinion Filed April 3, 1928.

(Syllabus.)

**1. Principal and Agent—Agency Provable by Circumstantial Evidence—Question for Jury.**

Agency may be established by circumstantial evidence, and when agency becomes a disputed question of fact, it is a question for the jury to determine, but where there is no evidence of agency, the trial judge should not submit such question to the jury, but should sustain a demurrer thereto.

**2. Appeal and Error—Harmless Error—Admission of Evidence.**

This court is not authorized to reverse a cause on the erroneous admission of evidence, unless, after an examination of the entire record, it appears to the court that the error

complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

### 3. Banks and Banking—Ultra Vires Contract by Cashier—Bank Estopped by Accepting Benefit.

When a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by the First National Bank in Coalgate, Okla., against the First National Bank of Ada, Okla., the First National Bank in Ada, Okla., P. A. Norris, and H. N. Horner. Judgment for defendants, and plaintiff appeals. Affirmed.

George Trice and Denver N. Davison, for plaintiff in error.

Robert Wimbish and W. C. Duncan, for defendants in error.

PHELPS, J. On the 30th day of October, 1924, H. N. Horner, a national bank examiner, discovered that the First National Bank of Ada, Okla., was insolvent. In order to avoid the detriment resulting from the bank's failure and the consequent loss to the depositors and the hardships upon the community which would naturally follow such failure, Mr. Horner called into consultation a number of the heaviest depositors, including the First National Bank in Coalgate, plaintiff in error here. As a result of such conference the sum of $30,000 was subscribed and offered to P. A. Norris, together with other considerations unnecessary to mention here, as an inducement for him to take over the bank's affairs and assume the deposit liabilities.

Plaintiff in error, who was plaintiff below, had $32,000 on deposit in said bank and through its cashier by check on this account made a contribution of $6,000 to this $30,000 fund.

It appears that among the assets of the bank there was more than $100,000 of worthless paper or paper of questionable value which the bank examiner required to be taken out of the bank's assets and charged off, and it was agreed and understood that whatever might be realized out of this charged off paper should be applied towards reimbursing the contributors of this $30,000 fund.

On November 1, 1924, Mr. Norris took charge of the assets of the bank, assumed the deposit liabilities, procured a new charter under the name of the First National Bank in Ada, and proceeded to conduct a general banking business. During the first day Mr. Norris had charge of the bank plaintiff in error deposited in said bank about $4,000. This sum, together with the $26,000 remaining in its account, was checked out within a few days, which, after the $6,000 contribution had been deducted, balanced its account. On the 10th day of November, 1924, plaintiff drew a draft on the First National Bank in Ada for $6,000, which went to protest, and plaintiff then filed its suit in the district court of Pontotoc county against the First National Bank of Ada, the First National Bank in Ada, P. A. Norris, and H. N. Horner, charging that the defendants had conspired together and had unlawfully appropriated this $6,000, and prayed judgment against each of them for said amount.

When the case was called for trial and the plaintiff had introduced its evidence and rested, the court sustained a demurrer to the evidence as to defendants Norris and Horner, and at the close of the trial, at the direction of the trial judge, the jury returned a verdict in favor of the other defendants, to reverse which this appeal is prosecuted.

It is first contended by plaintiff that the court erred in sustaining the demurrer to the evidence as to defendants Horner and Norris. It appears that Mr. Norris had nothing, personally, to do with the negotiations leading up to the contributions, but that the stockholders of, and depositors in the bank urged, persuaded, and offered these inducements to him in an effort to get him to take charge of the bank and avoid the impending catastrophe in the community. He finally agreed to do so if the request were made in writing and signed by those who desired him to take such course. These negotiations were conducted largely under the direction of the bank examiner, H. N. Horner, one of the defendants here, and it is the contention of plaintiff that in these negotiations Horner was not only representing himself, but was acting as agent for Norris, and that this question of agency was a question primarily to be determined by the jury.

In support of this contention counsel cite numerous authorities holding that it is not necessary to establish agency by a direct and positive contract, but that it may be established by circumstantial evidence, and when disputed becomes a question of fact which must be submitted to the jury.

We agree that this is a correct announce-

ment of the law, but this principle of law necessarily carries with it the presumption that there is some evidence tending to prove agency. We have carefully examined the record in the instant case, and fail to find any evidence which even tends to prove that Horner was acting as agent for Norris. The evidence abundantly supports the statement of the trial judge when, in sustaining the demurrer, he said, "It is very clear that Mr. Horner was acting in an official capacity." The evidence clearly shows that Mr. Horner was, as a public official, assisting in averting the disastrous consequences of a bank failure, and the trial court properly sustained the demurrer to the evidence.

It is next contended by plaintiff that the trial court erred in admitting incompetent, irrelevant, and immaterial evidence. We have carefully examined the record of the evidence of which complaint is made, and conclude that if, perchance, improper evidence were admitted, it in no way prejudiced the rights of plaintiff, and we are constrained to follow the rule laid down in Mounts v. Boardman, 79 Okla. 90, 191 Pac. 362, which has several times been emphasized by this court and which is merely a reiteration of section 2822, C. O. S. 1921, providing that:

"No judgment shall be set aside or new trial granted * * * on the ground of * * * the improper admission or rejection of evidence, * * * unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

It is next contended by plaintiff that the court erred in directing a verdict for defendants, emphasizing the fact that the back of the check with which plaintiff's contribution was made bore the following notation:

"This check is given with the understanding that same is to be used in case Mr. P. A. Norris takes over the First National Bank, Ada, Okla., and then it is to be deposited in a special fund, and after losses to the amount of $108,000 capital and surplus of said bank at this date, then a bond of $20,000 and a cash deposit of P. A. Norris for $20,000 is exhausted, then if this check is used the amount is to be reimbursed out of the recovery of said charged off assets."

This check was made payable to H. N. Horner and became a part of the $30,000 fund turned over to Mr. Norris by Mr. Horner, it being understood that the consideration which Norris received for assuming the deposit liabilities of the bank was that the stockholders of the bank were to turn over to him the capital and surplus of the bank, aggregating $108,000, and make a bond to him in the additional sum of $20,000 and that he was to put $20,000 of his own money in the bank, and if these amounts were not sufficient to take care of the losses resulting when the bad paper was charged off, then this $30,000 contribution, including the $6,000 of plaintiff which was to be placed as a special deposit in the bank, should also be used.

The evidence shows that this $30,000 remained in the bank as a special deposit for about 60 days, and when it was ascertained that the losses aggregated well up towards $200,000 this fund was taken out of the special deposit and used as the liquid assets of the bank, and it is plaintiff's contention that the conditions of the deposit have not been met, and therefore the disposition made of this $6,000 amounted to the appropriation thereof. It will be observed, however, that this special deposit had been in the bank only ten days when plaintiff attempted, by the draft in question, to withdraw it.

A careful examination of the record shows a complete failure of plaintiff to sustain its contention by the evidence. It is the contention of defendants that if the capital and surplus, plus the bond given by the stockholders, plus the $20,000 in cash Norris put in the bank, failed to equal the amount of the aggregate losses of the bank because of worthless paper therein, that plaintiff's contribution became final and absolute and plaintiff's only chance for reimbursement was from the salvage from the charged off paper. In our judgment, this contention is abundantly sustained by the evidence, and in directing the verdict the record shows the trial judge made the remark:

"I further find that the suit was prematurely brought and the plaintiff will be entitled to participate in the charged off assets at a later date."

It is next contended that the cashier of the plaintiff bank had no right or authority to make the $6,000 contribution and that his act in so doing was ultra vires and void. In their briefs, counsel for defendants concede that the principle of law contended for by plaintiff is correct, to wit, that the cashier of a bank primarily has no authority to make donations from the funds of the bank, but contend that the acts of the cashier were ratified by the directors. It appears that the cashier immediately reported the contributions to the board of directors; they had a meeting and, in substance, said: "That is the best we could do under the circumstances." They deposited several

thousand dollars more in the bank and there is evidence in the record that in rejoicing over Norris stepping in and averting the bank failure at least one officer of the plaintiff bank made the remark that the closing of the Ada bank would have necessitated a refinancing of the plaintiff bank, and it is the contention of defendants that plaintiff cannot participate in the benefits resulting from the unauthorized act of its cashier and then repudiate his authority. This contention has abundant support in the authorities. Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392; First Nat. Bank v. Womack, 56 Okla. 359, 156 Pac. 207; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. Ed. 611; Citizens Nat. Bank v. Appleton, 216 U. S. 196, 54 L. Ed. 443.

We, therefore, conclude that the trial court committed no error in directing the verdict, and its judgment is, in all things, affirmed.

BRANSON, C. J., MASON, V. C. J., and HUNT, CLARK, RILEY, and HEFNER, JJ., concur.