No. 27,974.

THE ANDALE STATE BANK, *Appellee*, v. THE WICHITA STATE BANK, *Appellant*.

(268 Pac. 735.)

Opinion filed July 7, 1928.

*Kos Harris, V. Harris, M. P. Shearer, Robert C. Foulston* and *George Siefkin,* all of Wichita, for the appellant.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Andale State Bank to recover a deposit which it had in the Wichita State Bank, and which the latter had appropriated and applied upon claims held against the former. Several notes about which the controversy arose were first taken and held by the Ranchmen's State Bank, but on or about May 29, 1922, that bank was sold to the Wichita State Bank, which took over the assets of the Ranchmen's State Bank and assumed its liabilities, and thereafter the dealings respecting the notes and renewals thereof were had between the plaintiff and the the Wichita State Bank. At the trial of the action without a jury, the court made the following findings of fact and conclusions of law and rendered judgment for plaintiff.

"1. On October 30, 1922, the Andale State Bank had on deposit in the Wichita State Bank the sum of $4,235.97, which deposit was on that date appropriated by the Wichita State Bank in partial satisfaction of a claimed indebtedness due it from the Andale State Bank, growing out of two notes hereinafter referred to.

"2. The Wichita State Bank had theretofore acquired from the Ranchmen's State Bank of Wichita, Kansas, two notes; one for $5,000 signed by C. L. Ault as maker, payable to Harry Ven John and indorsed by Harry Ven John by blank indorsement; the other note for $10,000, signed by Adolph Kropf and Harry J. Ven John as makers, and payable to the Ranchmen's State Bank. The name of the Andale State Bank nowhere appears on either note as maker, payee or indorser thereof. These two notes are renewals of prior notes for like amounts, on none of which did the name of the Andale State Bank appear as maker, payee or indorser.

"3. On or before April 1, 1919, the plaintiff bank opened an account with the Ranchmen's State Bank, and thereafter the former from time to time rediscounted paper with the latter.

"4. During all of the times material to the issues in this case Harry J. Ven John was cashier of the Andale State Bank and in the active management of said bank.

"5. On July 10, 1919, the Andale State Bank sent to the Ranchmen's State Bank for credit a note for $10,000, signed by Adolph Kropf as maker, payable to Harry J. Ven John and indorsed by Harry J. Ven John individually. On the same day there was credited to the account of Harry J. Ven John in the Andale State Bank the sum of $10,000. On July 14, 1919, the Ranchmen's State Bank credited the Andale State Bank with $9,853 as proceeds of said note. This note was thereafter renewed from time to time by notes payable to the Ranchmen's State Bank, signed by Adolph Kropf and Harry Ven John, the last of which renewals was the note of May 18, 1922, above described in finding 2.

"6. On May 29, 1920, the Andale State Bank sent to the Ranchmen's State Bank for credit a note for $5,000, signed by C. L. Ault as maker, payable to Harry J. Ven John and indorsed by Harry J. Ven John individually. On the same day there was credited to the account of Harry J. Ven John in the Andale State Bank the sum of $4,925.15. On June 1, 1920, the Ranchmen's State Bank credited the Andale State Bank with $4,925.15, as proceeds of said note. This note was thereafter renewed from time to time by notes payable to Harry J. Ven John, signed by C. L. Ault as maker, the last of which renewals was the note of March 19, 1922, above described in finding 2.

"7. Sometime prior to July 10, 1919, Harry J. Ven John made oral arrangements with Ray F. Foley, cashier of the Ranchmen's State Bank, whereby the Ranchmen's State Bank agreed to carry the original Kropf note, it being suggested at the time that the note would be an excess loan for the Andale State Bank, and that it would be an accommodation to the Andale State Bank if the Ranchmen's State Bank would carry it. At some time prior to May 29, 1920, similar arrangements were made in regard to the original Ault note.

"8. The original credits by the Ranchmen's State Bank to the Andale State

Bank of the proceeds of the notes as above referred to were so made at the suggestion of Harry J. Ven John.

"9. On October 21, 1922, Harry J. Ven John paid to the Wichita State Bank $2,040, which was credited on the C. L. Ault note. The records of the Andale State Bank of its transactions on that date and on the two days prior thereto do not show this payment to have been made out of the funds of that bank.

"10. In the statement of the resources and liabilities of the Andale State Bank, made April 24, 1923, upon an examination by the state banking department and signed by W. A. Hecht, who was then cashier of the bank, it having been reorganized some time between October, 1922, and April, 1923, the Andale State Bank did not list as an asset any deposit with the Wichita State Bank.

"11. On September 12, 1923, in a similar report or statement, the Andale State Bank carried under 'Other resources' $4,235.97 as a balance with the Wichita State Bank.

"12. On February 14, 1924, in a similar report, the Andale State Bank carried as 'Special account, Wichita State Bank,' the sum of $4,235.97.

"13. On March 8, 1924, the Andale State Bank was ordered by the state banking department to remove said amount from its books. Thereafter said amount did not appear on such statements until after December 11, 1924, at which time the Andale State Bank was given permission by the banking department to reinstate the account and to carry it as 'other resources.'

"14. In a conversation between Harry J. Ven John and an officer of the Wichita State Bank, had shortly after the deposit had been applied as heretofore found, the evidence shows that Harry J. Ven John stated in reference thereto, that, 'it was all right, but he wished he hadn't done it. He was short of money and his reserve was down.'

"15. The evidence does not show any authority given by the board of directors of the Andale State Bank to Harry J. Ven John to obligate the bank for the proceeds of the notes in question, nor does the evidence prove the Andale State Bank received the benefits of the transaction."

CONCLUSIONS OF LAW.

"1. Its names not appearing on the notes, the plaintiff could not be held liable in an action based thereon.

"2. The evidence does not show an agreement on the part of the Andale State Bank to repay the Ranchmen's State Bank the money advanced by it in connection with the notes in controversy, nor can an agreement so to do be implied from the transactions between the parties as set out in the findings of fact.

"3. The money having been advanced by the Ranchmen's State Bank on what on its face appears to be the individual responsibility of Harry J. Ven John and the makers of the notes, it devolved upon the defendant to show express authority in Harry J. Ven John to make the Andale State Bank responsible therefor.

"4. The evidence being insufficient to prove that the plaintiff was indebted

to the defendant at the time the deposit was appropriated, the plaintiff should recover judgment for $4,235.97, with interest at 8 per cent per annum from October 30, 1922."

The Wichita State Bank appeals.

The turning point in the case is whether the Wichita State Bank had authority to apply the deposit of the Andale State Bank to the indebtedness of that bank. The facts show that the Andale bank opened a deposit account with the Ranchmen's bank upon an agreement that the reciprocal balance should be maintained between them, and which under banking rules should not be less than twenty per cent of the amount carried. The notes in question were sent by the Andale bank to the Ranchmen's bank for rediscount and credit. They were not transmitted for collection nor for an individual charge or credit to Ven John, but were sent to be discounted and credited to the Andale bank. On the Kropf note for $10,000, the Ranchmen's bank credited the Andale bank with the proceeds, to wit, $9,853, and on the Ault note for $5,000 there was a credit given the Andale State Bank, after the discount was taken out of $4,925.15. No complaint was made of this disposition of the paper or of the credits given. On the contrary, the court has found that the credits so given were made at the suggestion of the cashier of the Andale bank. To this authority for the action taken the evidence shows that the credits given to the Andale bank were checked out and used by the Andale bank. The bank operated under the agreement mentioned for several years, and while so operating there were almost daily transactions where there were transfers and discounting of commercial paper. The notes were in the hands of the Andale bank, and were transferred, as we have seen, by its cashier to the other bank. The transfer was made by Ven John, not as a personal matter, but by him as cashier, to be charged to the account and to the credit of the Andale bank. It is true that Ven John entered a charge against himself in the books of the Andale bank, but the Ranchmen's bank had nothing to do with this device and is not bound by the entries that he chose to make in the books of his own bank. The transfers by him as cashier, and the discounting of the notes and having the proceeds placed to the credit of his bank, were done in the ordinary course of business of a bank. It appears that the business of the bank was intrusted to him as cashier and as its active financial manager. The bank is spoken of as a one-man bank, and for a long period the cashier had carried on,

transferring exchange, making the deposits in the Ranchmen's bank and making withdrawals therefrom.

The trial court appears to have placed its decision mainly on the ground that there was no evidence of authority given the cashier to obligate the bank for the proceeds of the notes, and that as the name of the Andale bank did not appear on the notes it could not be held liable thereon. The action was not brought on the notes, but was brought under the agreement for the placing and withdrawal of deposits. The transaction was one which a cashier may ordinarily do, since that officer has authority to buy and sell commercial paper and to make transfers of such paper. He had authority to make an arrangement or an agreement with the Ranchmen's bank as to the transfer of such paper and the placing of the proceeds to the credit of the Andale bank. (*Bank v. Bank,* 98 Kan. 563, 159 Pac. 403; *Trust Co. v. Trust Co.,* 188 N. C. 766.) The directors of the bank had authority to make such an arrangement; and, having intrusted all the business of the bank to its cashier, is not in a position to repudiate his acts. It availed itself of the funds derived from the proceeds of the discounted notes and had withdrawn them. It acquiesced in the transfer of the notes and the placing of the proceeds to its credit in that, after the deposit had been applied to the indebtedness of the Andale bank and its cashier was informed that the amount had been charged off to the account and had appropriated the deposits to the indebtedness of the bank, the cashier ratified the application by saying in effect that it was all right, that he was sorry they had done it, that he was short of money as his reserve was low at that time. It may be noted that subsequently when a report was made to the state banking department of its resources and liabilities, the deposit was not listed as an asset of the Wichita State Bank, although in a later report it did state that it had a deposit of $4,325.97 in the Wichita State Bank and still later an order was made by the bank commissioner to remove that amount from its statement. It appears the bank was reorganized about January 1, 1923, and in reconciling statements between the banks made in June, July, August and September, 1924, the new cashier of the Andale bank made no claim to the deposits which had been made in the other bank and which had previously been checked out. The circumstances of the transaction at the time of the deposit and subsequent ones all tend to show that it was a

bank transaction and not an individual one with Mr. Ven John personally. The deposit as made in the ordinary course of business was sufficient, we think, and, besides, his authority has since been recognized and ratified by the bank in checking out and using the credits transferred and deposited by the cashier. It is not questioned that a bank in which a deposit is made has the right to apply the same or a part of it to any matured indebtedness of the depositor to the bank. Upon the record it is clear that the plaintiff is not entitled to recover the deposit, and therefore the judgment of the district court is reversed, with directions to enter judgment in favor of the defendant.