## LANDER STATE BANK v. PUTNAM, STATE BANK EXAMINER

### (No. 1559; April 30, 1929; 276 Pac. 926)

### (Rehearing Denied)

For the appellant, there was a brief by *William O. Wilson,* Attorney General, *James A. Greenwood,* Deputy Attorney General, and *Richard J. Jackson,* Assistant Attorney general, and an oral argument by *Mr. Jackson.*

314

For the respondent there was a brief by *Durham and Bacheller* of Casper, and oral argument by *Mr. E. Paul Bacheller*.

BLUME, Chief Justice.

This is an action by the Lander State Bank against A. L. Putnam, state examiner and liquidating agent of the Shoshoni State Bank, Putnam being substituted for Nottingham, former liquidating agent. Judgment was rendered in favor of plaintiff, from which the defendant appeals.

The petition in this case is fully set forth in the case of Lander State Bank v. Nottingham, 37 Wyo. 50, 259 Pac. 181. The Shoshoni State Bank was a banking institution organized under the laws of the state of Wyoming and located at Shoshoni, in Fremont county, Wyoming. H. J. Shad owned 52% of the stock of the bank and was cashier and general manager thereof. The remaining officers, if

any, and directors of the bank, seem to have paid no attention to the affairs of the bank, and it is doubtful if any meeting of the board of directors was held during the period hereinafter mentioned. The Lander State Bank is a banking corporation under the laws of this state, located at Lander, in Fremont county. The Shoshoni bank kept money on deposit at the Lander State Bank, drawing drafts against it from time to time. Commencing with February 1, 1923, Shad as cashier of the Shoshoni bank, desired to obtain credit at the hands of the Lander bank, and on February 3 made a loan of $3,000, which was placed to the credit of the Shoshoni bank. This loan, and several other loans during that year, were paid off. About October 1, 1923, Shad applied to the Lander bank for another loan of $3,000, evidently sending his own note, guaranteed by the Shoshoni State Bank, to the Lander bank, as evidence of or perhaps as collateral to the loan, in a manner similar to that shown by the transaction of December 5, 1924, mentioned in Bank v. Nottingham, supra. The loan was granted, and the sum of $3,000 was placed to the credit of the Shoshoni bank, as of date October 2, 1923. This money was withdrawn by the Shoshoni bank from time to time by means of drafts issued against the deposit in the regular course of business, the drafts being drawn by a duly authorized agent of the Shoshoni bank, and so far as the record discloses none of the money was appropriated by H. J. Shad personally. At the end of every month, the Lander bank sent a reconcilement sheet to the Shoshoni bank, that of the month of October, 1923 showing the deposit of $3,000 above mentioned. This loan has never been repaid. It was renewed from time to time, the last time on December 5, 1924, when Shad executed a note to himself, endorsed by himself, and sent to the Lander bank together with a guaranty of this note executed by the Shoshoni bank, as

fully shown in the petition set forth in the Lander State Bank v. Nottingham, supra.

1. It seems to be contended by appellant that the evidence shows that the loan above mentioned was made to Shad personally. But the testimony is all the other way. It seems that Shad himself paid the interest on the loan from time to time. But that proves nothing. He had sent his own note to the Lander bank, to serve as collateral or evidence of the $3,000 loan, and while his various notes so made were probably nothing but accommodation notes, still so far as the Lander bank was concerned it was perfectly proper that he should keep up the interest on the notes which he had executed. It further appears that on December 5, 1924, when the loan of October 2, 1923, was renewed, the Shoshoni bank had a credit with the Lander bank of over $16,000, and it is, therefore, argued that the loan should have been charged to the account of the former bank. That may be true, but it may also be true that the cashier of the Shoshoni bank, anticipating future wants, had reason to keep a large account with the Lander bank, and the fact that the course mentioned was not pursued in no way negatives the good faith of the transaction, and certainly in no manner whatever shows that the loan of October 2, 1923, was not made, that the Shoshoni bank did not receive the benefit thereof or that it has been paid.

It is further argued that the guaranty of Shad's note was void, because it was Shad's own note. It might well be, that if the money in question had been turned over to Shad, for his benefit, the fact just mentioned might well have put the Lander bank upon inquiry. But that is not the fact, and hence it would seem that whether Shad's note or anyone else's note was used would make no difference. It is true, of course, that it is not within the ordinary function of a bank to become an accommodation endorser or guarantor. 7 C. J. 595. But that rule does not apply here,

for the guaranty was made as an incidence to the disposal of the paper. It is held that a bank may become the guarantor if that is necessary for its protection, or where the guaranty relates to commercial paper and is an incidence to the purchase and sale thereof. 7 C. J. 596; Allis-Chalmers Mfg. Co. v. Citizens Trust Company, 3 F. (2nd) 316. We think that this rule, rather than the one previously stated, applies in this case, if either rule has any bearing in this case, even though the disposal of the note was not strictly a sale.

Attention, however, is further called to Section 5148, W. C. S. 1920, which provides, among other things, that all notes, except bills of exchange discounted by a bank, shall be made payable directly to the bank, and shall not be assigned, except for rediscount and other purposes which are immaterial herein, and the conclusion is apparently drawn therefrom that the transaction herein was *ultra vires*. But counsel in thus arguing overlook the fact that the Shoshoni bank received the benefit of the transaction. It is said in 7 C. J. 539:

"A bank cannot escape liability by setting up that a particular transaction was *ultra vires* where it has received the benefit thereof."

In Perkins v. Boothby, 71 Me. 91, 97, the court, quoting, said:

"Why should not a corporation be always liable to refund the money or property of a person which it has obtained improperly and without consideration, or if unable to return it, to pay for the benefit obtained thereby? To say that a corporation cannot sue or be sued upon an *ultra vires* arrangement is one thing. To say that it may retain the proceeds thereof which have come into its possession without making any compensation whatever to the person from whom it has obtained them, is something very different, and savors very much of an inducement to fraud."

To the same effect are: Citizens Central Nat. Bank v. Appleton, 216 U. S. 196; 30 Sup. Ct. 364, 54 L. Ed. 443; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; First Nat. Bank v. Womack, 56 Okla. 359, 156 Pac. 207; Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392, L. R. A. 1917 A. 1021; Bennett, et al. v. Gage & Co., 74 Okla. 69, 176 Pac. 744. We accordingly do not think that the Section of the statute cited has any controlling effect in the case at bar.

The question of the validity or invalidity of the guaranty is merely involved in this case incidentally, if at all, because the suit herein is not on the guaranty, but on the loan above mentioned; in other words, this is an action for money had and received. The question as to whether or not the action should have been brought on the guaranty rather than the original loan is not involved herein and has not been argued, and there is sufficient evidence in this case for the court to find that the loan above mentioned was in fact made, and that the notes of Shad discounted with the Lander bank were merely used as evidence of or collateral to the loan itself. The Shoshoni bank obtained the benefit of that loan. It was to that extent enriched at the expense of the Lander bank. The reconcilement sheets sent every month to the former conveyed knowledge to it that the credit was extended. It was drawn out in the regular course of business, upon drafts signed by a proper officer of the Shoshoni bank, and if under these circumstances Shad obtained any benefit from the loan personally, the Lander bank should not, we think, be held responsible therefor, but that it should be repaid the amount of the benefit thus shown to have been received by the Shoshoni bank, and the fact that Shad may not have been duly authorized to make the loan is not of importance under the circumstances of this case. 7 C. J. 539.

In Bank v. National Bank, 57 Kan. 183, 45 Pac. 587, the court said:

"A principal cannot receive and retain the benefits of a transaction and at the same time deny the authority of the agent by whom it was consummated." (cases cited).

The same principal was announced in Merchants Nat. Bank of Mandan v. First Nat. Bank, 238 Fed. 502 (C. C. A.); Farmers Bank v. Bluefield Nat. Bank, (C. C. A.) 11 Fed. (2d) 83; Bank of Amsterdam v. Welliver, 215 Mo. App. 247, 256 S. W. 130, and cases cited; First Nat. Bank in Coalgate v. First Nat. Bank of Ada, 130 Okla. 149, 265 Pac. 1051; Andale State Bank v. Wichita State Bank, 126 Kan. 441, 268 Pac. 735. Many other authorities might be cited. An exhaustive discussion of the principle here involved is contained in Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611, and the conclusion arrived at therein is in harmony with our decision. In fact we know of no authority which has denied recovery under the circumstances shown in this case. Not even under Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470, which was very much modified by Aldrich v. Chemical Nat. Bank, supra, could recovery herein be denied.

2. It is contended by counsel for appellant that, inasmuch as the suit herein is one on a loan claimed to have been made on December 5, 1924, evidence of prior transactions does not tend to prove that loan, and that inasmuch as it is shown herein that the loan of $3,000 was in fact made on October 2, 1923, and that the transaction of December 5, 1924, was only one for the renewal of the loan, when no money in fact was advanced by the Lander bank to the Shoshoni bank at that time, there is fatal variance between the pleading and the proof. The fact that the loan was made on October 2, 1923 and that it was renewed thereafter from time to time showed, of course, only the original consideration for the loan, and we are unable to see why the evidence was inadmissible, unless the objection that there is a fatal variance is well taken. The suit was, it is

true, upon a loan made on December 5, 1924. That perhaps implies an "original" loan, a loan at which money is actually advanced, and perhaps excludes the idea that the loan is but a renewal or extension, particularly where no note, or other evidence in writing specifically showing the loan, is taken. And it may well be that, in fairness to the defendant in this case, the petition herein should have shown that the loan sued on was but a renewal, instead of leaving the implication that money was actually advanced to the Shoshoni Bank on December 5, 1924, which was not true. Hence, were it not for the statutes of this state, it might be that we should have to sustain the claim of fatal variance. Still the parties and the amount were the same; something in connection with a "loan" was done on December 5, 1924—namely, the renewal or extension thereof—and in view of these facts we hardly think that we should hold that there was a total failure of proof within the meaning of Section 5862, W. C. S. 1920, but that it was at most merely a question of variance as contemplated by Section 5860, W. C. S. 1920, which reads as follows:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended, upon such terms as are just."

This statute seems to contemplate that where it is merely a question of variance, that matter shall be cured, at least as far as possible, in the lower court. This court said in Luther Lumber Co. v. Shedahl Sav. Bank, 22 Wyo. 302, 139 Pac. 433, and in Engen v. Olson, 22 Wyo. 522, 145 Pac. 756, that if there is any prejudice arising by reason of the variance the fact of such prejudice must be shown at the trial. The Supreme Court of Colorado, passing upon a

similar statute in the case of Schmidt v. First Nat. Bank, 10 Colo. App. 261, 50 Pac. 733, said as follows:

"It is urged with some apparent conviction that there was a variance between the pleadings and the proof, because the bank alleged it was the owner of the property, whereas the proof was that the bill of lading was delivered as security for money loaned. In the first place, the variance would not be fatal because the defendants failed to object on that ground, to allege surprise, seek the postponement of the trial, or to take any other steps which are essential to make this question available on an appeal."

In the case of Stokes v. Brown, 20 Ore. 530, 26 Pac. 561, the Supreme Court of Oregon passed upon a statute similar to ours, and in that case said in part:

"It will be observed that it is not left to the judgment of the court whether, in a given instance, the variance was calculated to mislead, but that fact must be proved to the satisfaction of the court. Where the variance is not material, as above provided—that is, where the party has not proved that he has been misled—the court may either direct the fact to be found according to the evidence, or may order an immediate amendment, without cause. * * * These provisions have materially changed the rule of evidence, and it does not now depend upon the incoherence of the two statements upon their face, but upon proof *aliunde,* as to whether the party has been misled to his prejudice by the incorrect statement. In this case the defendants did not offer any proof of the character required, nor did they claim that they had been in any way misled. They contented themselves by relying upon their objection to the admissions of the contract in evidence, claiming that the contract alleged in the complaint is different from that offered, and hence insisting that the proof was not within the issue. * * * If defendants were in any way misled by the discrepancy between the allegations and proof, they should have made that fact appear to the court; and, not having done so, the variance must be considered immaterial, and the facts found according to the evidence."

See also Nelson v. Dawgiallo, 73 Ore. 342, 143 Pac. 924, 1199, and cases cited in Luther Lumber Co. v. Bank, supra.

In the case at bar, while the evidence of the original loan was objected to, the court's attention was never called, at least directly, to the fact that counsel for the defendant believed that there was a variance, and no opportunity, or at least no sufficient opportunity, was given the trial court to cause the provisions of Sec. 5860, supra, to be complied with. No mention of the fact that there was a variance or that the defendant was prejudiced by reason thereof was made, at least directly, in the motion for a new trial, and it is significant that counsel for appellant do not even claim in the brief filed in this court, that they have been misled. In view of these facts and in view of the further fact that we are not convinced that there was any actual prejudice, we do not think that we should sustain the objection on this point.

The trial court allowed interest at the rate of eight per cent. per annum. This was error, inasmuch as the suit was for money had and received. Only seven per cent. simple interest per annum should have been allowed. The judgment will be modified to that extent. Otherwise we find no prejudicial error, and with the exception mentioned, the judgment is affirmed.

*Modified and Affirmed.*

KIMBALL and RINER, JJ., concur.