**BARNETT, Bank Com'r, et al. v. KEMERER.**

No. 26381.    March 2, 1937.

Rehearing Denied April 13, 1937.

L. H. Harrell and A. M. Kerr, for plaintiffs in error.

J. W. Bartholomew and C. F. Green, for defendant in error.

CORN, J.  This is an appeal from the district court of Pontotoc county.  The action originated in that court by P. A. Kemerer, as plaintiff, against W. J. Barnett, Bank Commissioner, who had charge of the liquidation of the Security State Bank of Ada, which had gone into voluntary liquidation and had been taken over by the Bank Commissioner in order to wind up its affairs.  Tom Youngblood, liquidating agent for said bank, was also made a defendant.  The plaintiff, Kemerer, obtained judgment in the trial court for $2,000, together with interest.  The parties to this appeal will be referred to as plaintiff and defendants, as they appeared in the trial court.

The facts upon which this action is based are substantially as follows:  Sometime in 1929, Cannady employed Kemerer and his brother, John Kemerer, by the day, to drill an oil well near Dustin, in Hughes county,

yet Cannady had a contract with several large companies that he, Cannady, would drill or have the well drilled to a depth of 4,200 feet.  This resulted in Cannady and said companies entering into a contract known among oil operators as a "bottom hole" contract, which means that when the operator drills a well to a certain depth, the owners or the persons for whom the well is drilled will pay a certain sum.  This "bottom hole" agreement provided that when Cannady had drilled to a depth of 4,200 feet, he would be paid $8,000.  Such contract from responsible parties would be an asset in the hands of the operator; if he was so situated that he did not have the ready cash to meet his pay roll and wanted to convince his employees that he would have the money to pay them when they completed the well or reached a certain depth, he could show this to his employees or arrange through some bank to finance his project.

On April 2, 1930, Cannady would become indebted to plaintiff and his brother John, for labor as drillers upon said well, in the sum of $2,362, to Joe and Lee Cantell in the sum of $426, and to Sam Stephens in the sum of $100 for like services, amounts aggregating $2,888.

Cannady was doing business with the Security State Bank of Ada, so he arranged with the bank to advance him certain sums based upon the "bottom hole" contract, and also arranged with the bank to collect the $8,000 from the parties who had agreed to pay same, when it became due.  In order to have something to show the laborers employed to drill the well that he had liquid assets with which to pay them for their services when the well was completed, Cannady, on April 2, 1930, wrote L. A. Ellison, vice president of said bank requesting him to issue a letter of credit to be shown to said laborers, and at the same time drew a check on said bank against said contemplated collection for $2,362, payable to the order of P. A. and John Kemerer, in settlement for their labor upon said well, with instructions to L. A. Ellison, its active vice president, to pay said check to the Kemerers when the amount of said contracts had been collected.  Ellison, acting in obedience to said request, did on said date issue a duplicate deposit slip in favor of P. A. and John Kemerer in the sum of $2,362.  The $8,000 was collected as contemplated, but before the bank could pay the same to plaintiff, Cannady stopped payment on the check he had placed in escrow for plaintiff, but permitted the bank to retain $362 from said amount, applying same upon a note of like amount that plaintiff owed the bank.  John Kemerer,

named in the deposit slip, assigned his interest to his brother, P. A. Kemerer, the plaintiff; therefore, the action proceeded between plaintiff and defendants.

Defendants in their brief have consolidated and argue, under the following head, specifications of error Nos. 1, 3, and 5 to 19, inclusive, to wit:

"Irregularities in the proceedings of the court and the orders of the court by which the defendants were prevented from having a fair trial."

They follow up these assignments of error by argument and presentation of authorities, which are not supported by the evidence. Their argument is to the effect that where a person goes into a bank, hands the cashier or other officer a note or contract to be collected by the bank, the bank is not, except in case of gross negligence, accountable to that person until the collection has been made, the same being an ordinary transaction which takes place every day with banks and their customers. The instructions requested by defendants are the law based upon such an ordinary transaction above stated, or, in other words, apply where there are no "strings tied" to the paper sought to be collected and the bank has made no representations concerning the transaction which have caused a third party to act thereon. It is true a person has a perfect right to stop payment upon an ordinary check he has drawn, payable to another person, before same has been paid, but where the same is placed in escrow with said bank and deposit slip delivered to the payees of said check and said persons have acted on the strength of the check, issued in their favor, to their detriment, a different situation exists.

The check in question was introduced as defendant's exhibit "A," which reads as follows:

"Security State Bank     86-1168
    "Ada, Oklahoma, Apr. 2nd, 1930     No.____
"Pay to the
    "Order of P. A. & John Kemerer   $2362.00
"Twenty three hundred sixty two & No/100 Dollars.

"This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full.
"192____
"_____Payable on collection
"_____of purchase orders
"_____mentioned in letter of
"_____ this date.
    "(Signed)   Chas. Cannady."

The deposit slip is as follows:
        "Duplicate Deposit Slip.
"Deposited in Security State Bank, Ada, Okla.
P. A. and John Kemerer     4-2-1930
--------------------------------- * * *
"Check as follows:
    "For collection subject to payment of purchase order held by us—OK of Chas Cannady.              $2362.00
Ellison."

Attached to the above and foregoing deposit slip was the following letter from Cannady to L. A. Ellison, vice president of the Security State Bank, which Ellison authorized Cannady to show to plaintiff, and for the very purpose, as Ellison afterwards testified, to strengthen Cannady's credit and ability to pay plaintiff, to wit:

"Charles O. Cannady

    "205 American Building,
        "Ada, Okla.     April 2, 1930.
                "Re: Bottom hole purchase
                    orders & distribution of
                    funds collected.
"Mr. L. A. Ellison,
    c/o Security State Bank,
        "Ada, Oklahoma

"Dear Sir:
"With reference to the previous letter and purchase orders which I delivered to you, beg to state further:

"It is my wish, as related to you, to secure the laborers of getting money when the test is completed and the money collected. I feel that in doing this they will be in better position to assure their creditors of their money in like manner.

"I, therefore, authorize you to issue a letter, receipt, deposit slip for collection of whatever anticipated credit for collection you deem advisable against the purchase orders, to the following named persons for the amount set opposite their names, viz.:

    "P. A. & John Kemerer,        $2362.00
    "Joe and Lee Cantell,           426.00
    "Sam Stephens,                  100.00

"Your favor in handling the above in some manner will be appreciated by the writer, and I am sure the boys will all feel grateful to you and me when I deliver the instruments in writings to them.

"Thanking you in advance, I am, Sir
        "Yours very truly,
            "(Signed)  Chas. Cannady.
"COC: amd."

The facts in this case do not show or reveal an ordinary everyday transaction, but show that the bank lent its credit to Cannady to the effect, and in such a way, that plaintiff

was led to believe that when the well was completed the bank would retain out of the "bottom hole" collection of $8,000 the sum of $2,362 for him. Acting upon the assurance by the bank that the money for his labor was secure, plaintiff continued to perform labor on the well.

As to whether the bank exercised exclusive control over the collection in lending its credit to Cannady for the purpose of influencing plaintiff to continue to perform labor on the well, or, in other words, acting in such manner as to take the transaction out of an ordinary collection transaction, we give part of the testimony of L. A. Ellison, active vice president of said bank and the person who handled the entire transaction.

Mr. Ellison testified on direct examination for and on behalf of defendants, in substance, as follows: That some time in 1930, Cannady drilled a well at Dustin; that the bank advanced him some money to drill the well; that Cannady had an agreement with some big companies for "bottom hole" money in the sum of $8,000; that when the contracts came in, he placed them in escrow in the bank as security for the money that the bank advanced him, and also to take care of the labor on the well; that Cannady wrote some checks at the same time he put up the deposit payable to Mr. Kemerer, who was the active man in charge of the well, and said he wanted to take out to the boys something to show that the money was an actual fact and not just what he had said, and asked Ellison to give him some kind of showing that the checks had been left to be paid to the men in the event the well was completed so that they would get their money; that witness gave Cannady a receipt for it showing that the bank had received the checks for collection, but contingent upon the payment of the "bottom hole" money; that when the well was completed Cannady said to Ellison he was not going to pay Kemerer; that he would pay the other men, but would not pay him. That Ellison argued with him that it looked as if he would have to pay Kemerer. He answered that he was not going to pay him and was going to stop payment on the check he gave for Kemerer, which the said bank permitted him to do.

When the bank failed to pay the amount specified in the check left with it by Cannady for plaintiff, after the bank had led plaintiff to believe it would do so when the purchase orders were collected, the bank acted at its peril and these defendants are bound by the actions of the bank.

We shall discuss next the question and law of ultra vires, raised in defendants' brief.

This court, in a long line of well-considered authorities, has settled this question in this state. A leading case upon this point is Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 P. 392. The first and second paragraphs of the syllabus read as follows:

"Where a cashier of a bank makes a contract, which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires.

"It may be considered as settled law in this state today that, when a corporation goes outside of its legitimate business and makes a contract, and that contract is executed, and the corporation has received the benefits of the contract, the courts will not listen to a plea of ultra vires."

It was also held by this court in Yeldell v. Bank of Elmer, 96 Okla. 184, 221 P. 422:

"Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank knowingly receives the benefits therefrom, it will be held to have ratified the contract.

"A contract is not deprived of mutuality by reason of the fact that the liability of both parties is contingent on the happening of a condition precedent."

Ellison testified that the bank had loaned Cannady certain sums of money for which the purchase orders were held as security and that the bank had loaned plaintiff $362, which was paid to the bank out of the $8,000 collection.

Plaintiff has perfected a cross-appeal wherein he contends the trial court committed error in not holding his judgment was a preferred claim against the assets of said bank.

From an examination of the facts in this case, we are of the opinion that this contention is without substantial merit.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, GIBSON, and HURST, JJ., concur. BUSBY, J., not participating.