CASE 109—ACTION BY A. M. STARKS AGAINST T. W. GALBRAITH TO
ENFORCE PURCHASE MONEY LIEN ON REAL ESTATE.—APRIL 14.

## Galbraith v. Starks.

APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  AFFIRMED.

PAYMENT—EVIDENCE—BOOKS OF ACCOUNT.

Held:  1. The mere showing by a debtor that money passed from
him to the creditor does not show that it was a payment on
the debt sued on, in the absence of a showing by the creditor
that it was for something else; but the debtor must show that
the money was to be applied on such indebtedness, or at least
that there was no other indebtedness.

117   915
e118  478

117   915
p122  150

117   915
f129  803

2. Defendant, by merely stating that a book of account was lost, does not show that he did not have other books showing the same things that were in the lost book, and constituting the best evidence.

3. A storekeeper's books are not evidence as to an account therein relative to purchase of land, and payment therefor; this not being connected with the business.

J. R. MALLORY AND PERKINS & TRIMBLE, ATTORNEYS FOR APPELLANT.

BROWDER & BROWDER, FOR APPELLEE.
(No briefs, record misplaced.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Beginning about 1886, and down to 1892, appellant became indebted to appellee in numerous transactions, all represented by the former's promissory notes, in the sum of approximately $5,000. Three of the transactions were the purchase of real estate; another, the purchase of a half interest in a drug store owned by the parties as copartners; others, rent of house. In the purchase of the interest in the store, appellant admitted, by writing then signed, that the notes and accounts owing the firm, amounting to the sum of $885, belonged to appellee, but that appellant was to collect them in the firm's name, and pay over to appellee the sums collected. Numerous payments were made at irregular intervals, upon this gross indebtedness. All of the notes were surrendered by appellee as having been paid, except one of $400, subject to certain endorsed credits, which was retained by appellee, and to collect which, and enforce the lien reserved upon a lot, this suit was brought. Appellant defended, pleading payment, and, in addition, seeking by counterclaim to recover of appellee $169.60, with interest, which he alleged he had overpaid. Although the various transactions had no connection one with another, it was asserted that payments,

were made indiscriminately by appellant to be applied on his indebtedness to appellee, and that it was so applied by the latter, extinguishing all the other debts, as well as the debt of which the note sued on was a part, and overpaying that debt, as stated. An issue was tendered upon the plea, and the proof heard. The only witnesses were the two parties. The trial court dismissed the counterclaim, and adjudged the recovery by appellee of the amount sued for; thus finding against the plea of payment. If there was evidence enough to sustain or refute the plea, the question would be one of fact. But we have come to the conclusion that there is not enough evidence for either purpose.

Able counsel have each presented theories of probability, that are not without plausibility. Yet in accepting either we would be forced to resort solely to conjecture—conjecture, it is true, that seems more or less probable. This state leads to a closer analysis of the rules of evidence upon which the respective theories must in part rest. The burden of proof upon the whole case was upon appellant. Had he testified clearly of his own knowledge as to the facts upon which his counsel rely, his case might have been made out. So with appellee. But the payments referred to were mostly made 10 or 12 years before the parties came to testify. Their recollections as to those transactions are shown to have been very misty, and far from satisfactory. They were merchants living in different communities. Nearly all the payments were by bank checks. That is, appellant had drawn certain checks on his banker in favor of appellee, but not stating in them the consideration. Some few payments are claimed to have been made in money. Appellant contends that as he has shown an aggregate of payments of money (by checks and otherwise) to appellee, within the period since the debts were

created, equal to or in excess of his indebtedness to appellee, he has done enough to shift the burden to appellee to show that they, or some of them, were not made on these notes.

"Payment" is a term of art, as used in law. It involves more than the passing of money, or its accepted equivalent, from one to another. The acceptance of money or other thing of value in satisfaction of a debt, or in exchange for labor, goods, or other commodity, will be a payment, where it was so intended by the payor. Generally there must be something shown in addition to the mere passing of money from one to the other. True, that fact may be a strong circumstance in determining whether it was intended and accepted as a payment on a debt. And other slight circumstances might satisfy the judicial inquiry as to the intent and purpose of such transaction. But it is not unusual for persons indebted to have other transactions with their creditors, and to pay money for something else than upon the pre-existing debt. Whether there was, or not, a payment made upon a particular debt, may frequently be of vast importance to the parties, as affecting other rights, as well as the rights of others. So that the intent of the parties becomes a material element in determining whether a transaction is a payment. The one who asserts that it is must prove it. There is no reason for a rule that would change the law of evidence where a payee of money happens to be a creditor of the payor, so as to impose upon the former a burden, and relieve the latter of it, contrary to the general rule in all other cases.

But going further in this case, it was shown, as has been indicated, that appellant undertook in 1888 to collect some $885 in notes and accounts for appellee, and to transmit him the money so collected. Appellee says appellant did col-

lect some of this money and paid it, and that some of the
payments now sought to be applied to the land notes sued
on were in reality made upon account of those collections.
Appellee naturally has no means of knowing actually whether
such collections had been made, for he does not claim to
have been present.  Appellant at first denied that appellee
owned the firm notes and accounts referred to, but evidently
that was a case of forgetfulness.  The writings, which he ad-
mitted upon confrontation, show the contrary.  Then he
testified that he did not recollect whether he had collected
any of those debts.  Indeed, he said he remembered nothing
whatever about it.  But he agreed that, if his books would
show anything on the subject, when he returned to his home
from giving the deposition he would transmit to the notary
a statement from them, showing the facts.  Some weeks later
he did write the notary a letter, which was attached to his
deposition in which he admitted having found that he had
collected certain of the notes, etc., amounting to less than
$100, but added that another book was lost; making the not
unreasonable impression that the lost book covered, also,
a part of the period during which such collections, if made,
would have been entered.    Appellant kept a sort of system
of books.  Appellee does not appear to have kept any memo-
randum at all of these transactions, more than the notes and
the written contracts.  So far, all will depend upon the re-
quirement of the law as to proving payment.  If, when ap-
pellant, the debtor, shows that money had passed from him
to appellee, the creditor, that it must be credited on the
former's existing indebtedness, unless the creditor can show
satisfactorily that it was for something else, then appellee
has made out his case.  On the other hand, if appellant should
be required to show, in addition to the passing of the money,

that it was to be applied on this indebtedness, or at least that this was all his indebtedness to appellee, then he has failed. While such fact of payment might be proved by circumstances from which the law would presume the intent and purpose of acceptance, here, however, instead of the circumstances pointing to such payment, they rather negative it, in several particulars. For example, when it was shown that appellant undertook to collect the old firm notes for appellee, and did in fact collect some of them, and thereafter made remittances unexplained, the law will apply, and will allow appellee to apply, as he has evidently done, such remittances' in discharge of the collections, rather than in payment of the remitter's own debts. In answer to the thought that only about $100 of the payments can be so accounted for from the evidence, we must remember that it was within appellant's power, and it was his duty, as the agent of appellee, to render a complete statement of those collections, or if, because of the loss of certain of his books, he could not render such statement, still he fails to thereafter give any explanation, or offer himself as a witness on that point, that he might be examined under oath touching the loss of the book, the period it covered, and whether, if it was only a ledger, a journal or cashbook showing the same things was not in his possession, from which, though with additional labor, the truth might have been gathered. Nor does he disclose how the account was kept in his books. He elects, instead, to leave those matters in doubt, relying upon the absence of such evidence, the admitted inability of his adversary to meet the point, and the supposed state of the law that under these circumstances his unexplained remittances would be credited on his individual debts to appellee. He who fails to produce the best evidence which is within his

Galbraith v. Starks.

control, or who fails in his duty to keep an account, whereby confusion, to his own advantage and to the detriment of his adversary, ensues, can claim no favorable presumption from his lapses. On the contrary, the law presumes that the best evidence, if produced, would be adverse to him. Applying that familiar and just rule in connection with what has been said above, the failure of appellant's proof becomes even more apparent.

Though appellant testified that he had paid the whole of his indebtedness, and stated that he so testified after having refreshed his recollection by an inspection of his books, we are satisfied that his statements are more in the nature of deductions drawn after examining his books, than a refreshed recollection of the original events. This is made apparent to us by the manner of testifying, and many statements of the witness. This brings us to consider the value of certain book entries proved in the record, and seemingly relied on as substantive evidence to sustain appellant's plea. Though it is not made perfectly clear, we gather that appellant had entered upon a ledger book an account showing certain payments made upon the various debts of which the note sued on is one. The account, as transcribed, is by no means complete as an account. It does not purport to be anything more than chronological entries of various payments alleged to have been made by appellant to appellee upon the land notes. As io their value as private memoranda, we are not here concerned. It is as to their relevancy as probative evidence. Appellant testified that they were made by him at the time, and were original entries. Still, we are of the opinion that they are not competent evidence. Shopkeepers' or tradesmen's books—the original entries made therein contemporaneously and in

the regular course of business—are admissible, under a rule of necessity as substantive evidence of the facts of the shop-keeper's transaction with his customers in relation to that particular business. Poor, etc., v. Robinson, 13 Bush, 290; 1 Greenleaf on Evidence, sections 117, 118. It is unnecessary to restate the reasoning underlying the adoption of this rule. Excepting the case of persons whose business it is to pay out money, such as bankers and the like, we do not know that it has been extended in this State further. Indeed, it has been intimated by this court (Brannin v. Foree's Adm'rs, 12 B. Mon., 508), that it was limited to such. It was no part of appellant's merchandising business to buy real estate, and to pay for it in installments. Such entries on his books, though made contemporaneously, were utterly foreign to his mercantile affairs, and can not, therefore, be said to have been entries made by a merchant or trades-man in the usual course of his business; and consequently they are not entitled to the presumptions of regularity and of freedom from purposeful fabrication that the routine en-tries of merchandise sales are conceded in law. Section 606, subsection 7, Civ. Code Prac., is but declaratory of the com-mon law on this point, with the addition that a party in in-terest may testify concerning such entries even as against one who is dead or under certain disabilities. The account does not prove anything. As the plea of payment was not sufficiently supported, the circuit court was right in not hazarding a guess as to what the truth concerning it was. Meagreness of evidence, that leaves the mind unsatisfied, is a failure of evidence.

The judgment should be affirmed.