CASE 17.—ACTION BY REUBEN CLARK AGAINST DIXIE LEE CLARK AND OTHERS ON A NOTE.—February 27.

## Clark v. Clark, &c.

Appeal from Floyd Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for defendants, plaintiff appeals. Affirmed.

1. Bills and Notes—Denial of Execution—Production of Instrument—Effect as Proof—Where a note and mortgage given to secure the same are not signed with the signature of the alleged maker and mortgagor and are not attested by a witness, but merely purport to be signed by the mark of the maker and mortgagor, the production of the note and mortgage of themselves does not prove anything as against a plea of non est factum.

2. Witnesses—Competency—Transactions with Decedent—Under Civil Code Practice, section 606, sub-section 2, providing that no person shall testify for himself concerning any statement of, or transaction with, a deceased person, the payee of a note and mortgagee of a mortgage, both of which appear in his own handwriting and purport to be signed only with the mark of the payor and mortgagor, cannot establish the validity of the instrument by his own testimony after the death of the payor and mortgagor.

3. Same—Civil Code Practice, Section 606, sub-section 2, provides that no person shall testify for himself concerning any statement of or transaction with a deceased person. Sub-section 6 provides that a person may testify for himself as to the correctness of original entries made by him in an accounting acocrding to the usual course of business, though the person against whom they have been made may have died or become of unsound mind. Held, That the payee of a note executed by a deceased person cannot by his own testimony establish an account kept by him and evidencing sums of money

loaned by him to deceased and containing a memorandum that the account was closed by the execution of the note.

JAMES GOBLE for appellant.

1. The requirement of sub-section 7 of section 732 of the Civil Code that a signature by mark must be attested by a witness, who can write his name, applies only to such written instruments as are provided for in the Code.

2. When a plea of non est factum to a note, signed by mark, is interposed, the party claiming the note assumes the burden of proving its execution. We think it is clearly shown, that a prima facie case has been made out by the claimant of the note sued on.

### AUTHORITIES CITED.

Civil Code, sub-section 7, section 606; sub-section 7, section 732; Meazels v. Martin, 93 Ky., 50; Maupin v. Berkley, 3 Ky. R., 617; Vancouver v. Murphy, 12 Ky. R., 733; Hinkle v. Dodge, 7 Ky. R., 733; Courtney v. Scott, &c., Litt. Select Cases, 457.

W. H. MAY for appellees.

1. When a plea of non est factum is made to a note the burden is on the claimant to prove its execution.

2. The alleged payor of the note being dead, under Civil Code, section 606, sub-section 2, the payee is incompetent to testify as to the execution of a note to which a plea of non est factum has been made.

3. A vest pocket memorandum book is not competent evidence as an account book of original entries of loans of money.

### AUTHORITIES CITED.

Jurisdiction, Decedent estates, Notes, Liens, Signature, Infants, Evidence, Fraud, Uncertainty of Description. (Civil Code of Practice, sections 62 and 66; Civil Code, section 606; Cornett, &c., v. Brashears, 100 Ky., 745; Chadwell's Admr. v. Chadwell, 98 Ky., 643; Vanover v. Murphy's Admr., 12 Ky. Law Rep., 733; Daniel on Negotiable Instruments, 5th Ed., Vol. 1, section 74, p. 95.)

## OPINION BY JUDGE BARKER—Affirming.

The one question in this record is whether or not

the appellant, Reuben Clark, was entitled to enforce the promissory note for $500 which he sued on in this action. The writing is as follows:

"Twelve months after date I promise to pay Reuben Clark the sum of five hundred dollars, for value received of him with interest from date. This October 11th, 1900.

his

"Calvin  X  Clark."

mark

"If this note is not paid within the time mentioned above, he is to have my Buffalo land. This land is known as my land off of the old home farm of my father's land I bought at sheriff's sale.

his

"Calvin  X  Clark."

mark

To that part of the cross-petition of Reuben Clark in which he sought to enforce the above instrument of writing against the estate of his dead brother, Calvin Clark, the appellees, who are the infant children of Calvin, by their guardian ad litem interposed a plea of non est factum, which contained, among other allegations, the statement that the note sued on "is a forgery and was forged by the hand of Reuben Clark for the fraudulent and corrupt purpose of cheating and defrauding these infant defendants out of what their father left them as a heritage. * * * " Upon the trial of this issue the court adjudged that the note in question was not established as the act and deed of the decedent, Calvin Clark, and dismissed the cross-petition in so far as it sought a judgment enforcing the instrument. From this judgment, the appellant is here on appeal.

It will be observed that the note and what purports to be a mortgage to secure it are not signed with the signature of Calvin Clark, nor are these instruments attested by a witness. Their production, then, of themselves proves nothing in the face of the plea of non est factum. It is admitted that the instrument sued on, together with the name of Calvin Clark appended thereto, is wholly in the handwriting of the appellant. He was clearly incompetent to testify in his own interest as to any transaction between himself and the dead man (subsection 2, section 606, Civil Code Prac.), and it is not contended that any person other than himself was present at the time the note was drawn or the alleged cross marks of Calvin Clark appended to the paper. The appellant however, seeks to establish the note by introducing himself as a witness to show that he kept an account of various sums of money loaned by him to his brother, which together make up the sum of $500, and also a memorandum that on the date of the note the account was closed on his book by the execution of the note. He states that this book was kept by him in the regular course of his business, and that the items are correct. The account, as copied into his deposition, is as follows:

"Calvin Clark, debtor to Reuben Clark for loaned money, one hundred dollars ($100.00). November, this the 14th, 1898.

"January 16th, 1899, loaned money one hundred dollars ($100.00).

"May 27th, 1898, loaned money fifty dollars ($50.00).

"April 15th, 1900, loaned money one hundred and fifty dollars ($150.00).

"October 11th, 1900, loaned money one hundred dollars ($100.00).

"This account settled October 11th, 1900, by note."

This testimony presents the question as to whether or not this account, so kept, can be properly established by the testimony of the appellant. We think not. In the case of Proctor v. Proctor's Adm'r, 118 Ky. 474, 81 S. W. 272, 26 Ky. Law Rep. 348, we undertook to construe subsection 6 of section 606 of the Civil Code of Practice, and to mark out the limitations to the right of persons to testify to acounts kept in their own interest against the estates of decedents. Subsection 6 of section 606 is as follows: "A person may testify for himself as to the correctness of original entries made by him against persons who are under no disability—other than infancy—in an accounting, according to the usual course of business, though the person against whom they were made may have died or have become of unsound mind; but no person shall testify for himself concerning entries in a book, or the contents or purport of any writing, under the control of himself, or of himself and others jointly, if he refuse or fail to produce such book or writing, and to make it subject to the order of the court for the purposes of the action, if required to do so by the party against whom he offers to testify."

The acount in this case cited was a claim for credit for several sums of money alleged to have been paid out by the defendant for his sister, and in proof of these payments the former offered a book kept by him. Exception was filed as to the competency of this evidence. After quoting subsection 6 of section 606 of the Code, the court, by review of the authorities, undertook to show what character of items kept in a

book of original entry were provable, in his own interest, by a claimant against the estate of a decedent. We take the following excerpt from the opinion as containing a complete statement of the rule under discussion: "The question presented is, to what account book does the statute refer? In Galbraith v. Starks, 117 Ky. 915, 79 S. W. 1191, 25 Ky. Law Rep., 2090, which was like this action on a note where a book account was relied on to show payments on the note, this court held that the provision of the Code above quoted is but declaratory of the common law, with the addition that a party in interest may testify concerning such entries, even as against one who is dead. In Brannin v. Foree's Adm'rs, 12 B. Mon. 506, which was also a suit on a note where a book kept by the defendant was relied on to show payments on the note, the common-law rule on the subject is thus stated by the court: "To render such entries admissible as evidence, the book must appear to contain a register of the daily business of the party, and to have been honestly and fairly kept; and the person who made the entries must swear that the articles charged were actually sold and delivered; that the entries are the original ones, and were made at or about the time of the transactions; and that the sums charged and claimed have not been paid. 1 Greenleaf on Evidence, section 118, and note 1. Evidence of this description is admitted upon the principle of "moral necessity." It is received upon the presumption that, unles it be admitted, there will be a total failure of proof, and that injustice will consequently result. It is, however, but secondary evidence, and that of the lowest grade. The principle upon which it is rendered admissible is, therefore, limited in its

operation to that character of dealing to which the law has prima facie ascribed a destitution of the ordinary means of proof, viz., the daily sale and barter of merchandise and other commodities, the performance of services and letting of articles to hire, and probably the payment, from time to time, of money placed on deposit, circumstances so frequent in succession and generally so trivial in their individual amount that the procurement of formal proofs cannot be expected, and would not compensate for the time necessary for the purpose. If the competency of the proof in this case be tested by the subject-matter, the entries in the books and the evidence in relation thereto were properly rejected. It was not the sale of the merchandise, or the performance of services, or the use of the property hired and returned, or the payment from time to time of money on deposit, but the payment of an outstanding debt, evidenced by a note in writing; a payment on which should be established, according to the usual course of dealing, either by a written receipt indorsed upon the note, or taken upon a separate paper. In those States where this character of testimony is deemed competent for any purpose it is not deemed sufficient to prove the payment of money." The entries in question were not, therefore, admissible at common law in cases of this sort; and, as the statute relied on is but declaratory of the common law, it does not apply to entries which at the common law were inadmissible. Were the rule otherwise, the estates of decedents might suffer unduly in this class of cases, and notes held by deceased persons be defeated by entries made by the debtor in his private book. The statute was not designed to accom-

plish this. Its purpose is to allow the debtor himself to testify to the correctness of entries made by him in his books kept according to the usual course of business in those cases where the books themselves at common law were evidence of the facts set out in them. It was not designed to change the rule as to what books were evidence.''

If the book containing the account of sums alleged to have been paid on a note could not be proved, under subsection 6, in the interest of the keeper of the book, much less so can the appellant in this case be heard to say in his own behalf that he kept a book showing loans of money at various times to the dead man in sums of from $50 to $150. This is clearly not the kind of account referred to in the case cited, nor did the appellant rely upon the account so kept, but undertook, as he says, to close it up by note, and when confronted with the fact that the note, for want of proper attestation, did not establish a prima facie case in his favor, he relied upon the account. It would require a casuistical mind, indeed, to discover a reason for refusing to allow appellant to testify as to the execution of the note by his dead brother and permit him to establish the items of which its consideration is said to consist, and its execution and delivery by testifying that he kept an account showing these facts. The same principle which denies him the right to tell of the execution of the note bars him from testfying as to the account. It was as easy to manufacture the account as to forge the note. As said in the opinion in the case cited, the principle which permits a party to testify as to he items of original entry in his own behalf is limited to that class of accounts which usually could not be established in any other way, and is

allowed upon the principle of "moral necessity," lest great injury should arise from a total failure of proof. No such consideration arises here. If appellant's theory is true, his brother owed him money, and was willing to sign a note to evidence it. That this note was not prepared in a way to make it legally valid as against the estate of the decedent is the result of his own negligence. His position in regard to the matter is not such as induces the judicial mind to strain the law in his behalf. His account of the reason that his brother signed the note by making his mark, instead of writing his name, is that the old man had been on a drunken debauch the night before, and was so nervous at the time the note was handed him for signature that he could only make his mark. To say the least, this was an unfortunate time to do business alone with a man who could neither read nor write and whose literary ability was limited to writing his own name in a mechanical manner. Appellant could not recover on the note written wholly by himself and signed with the mark of the payor, without establishing its validity by other evidence than his own testimony. Chadwell's Adm's v. Chadwell, 98 Ky. 643, 17 R. 1207, 33 S. W. 1118; Vanover v. Murphy's Adm'r, 15 S. W. 61, 12 Ky. Law Rep. 733. On the issue of fact raised by the plea in this case the chancellor decided adversely to him; and conceding that the dying declarations of the decedent —that he did not owe his brother anything—were wholly incompetent, we think the chancellor was right in the conclusion he reached.

Judgment affirmed.