## CROSS v. AMORETTI, ET AL.
(No. 1715; March 15, 1932; 9 Pac. (2d) 147)

For the appellants there were briefs by *W. E. Hardin,* of Lander, Wyo., *J. A. Greenwood,* Attorney General, *Richard J. Jackson,* Deputy Attorney General and *George W. Ferguson,* Assistant Attorney General, and oral arguments by *Messrs. Hardin* and *Jackson.*

176

BLUME, Justice.

This is an action by plaintiff Edith Cross against Amoretti, Welty, Helmer & Company, a partnership, and against the individual surviving partners and against the receiver of the partnership. Judgment was rendered in favor of the plaintiff, from which the defendants appeal.

The partnership above mentioned conducted a privately owned bank at a small place, named Dubois, in this state, with a capital of $10,000.00, doing business from 1913 or 1914 to about the middle of 1927. E. B. Helmer, one of the partners, had the active and apparently exclusive management of the bank. He died in the year 1927, and shortly thereafter the bank was found to be insolvent, and the State Examiner of this state took charge of its affairs under the laws of this state. The plaintiff herein claims that she loaned the partnership the sum of $3000 on January 11, 1923, and the sum of $1000 on January 15th, 1923, at interest at the rate of eight per cent per annum, and in her petition bases her claim upon an express contract, stating in her first cause of action:

"On January 11, 1923, plaintiff, at the request of said copartnership, loaned Amoretti, Welty, Helmer and Company the sum of $3000, which said loan said company promised to repay on demand with interest thereon at the rate of eight per cent per annum, payable semi-annually."

The second cause of action is stated in the same language, differing only in the amount and the date.

Over the objection of the defendants, plaintiff was permitted to introduce her day book and ledger, showing a charge against the partnership of the foregoing amounts on the dates above mentioned, and showing interest items paid. Her pass-book—issued by the bank—showed credits for interest payments at intervals of about six months, till the summer of 1927. Her day book in two places showed interest payments of $160, each on a note "at Amoretti, Welty & Helmer," and in one place an interest payment "on note of Helmer." In other places the items of $160 each were not identified, except as "interest," and except that in two places there is indication that the amounts were paid "by Amoretti, Welty & Helmer." Plaintiff also had two slips of debit items, shown to be in Helmer's handwriting. One of these reads:

"DEBIT                                    Date Jan 11 1923
Mrs. Edith Cross                              $3000.00
Investment Funds
Amoretti, Welty, Helmer & Co.
   Dubois, Wyoming
                              Authorized by Mrs. Cross."

The other is dated January 15, 1923 and is also for $3000.00, but that is probably a clerical mistake, and should be $1000.00. The books of the bank show no loans made to the bank. Other facts are shown by a stipulation entered into by counsel for the respective parties, which is as follows:

"It is stipulated by and between the parties Plaintiff and Defendants that the books of the Defendants Amoretti-Welty-Helmer and Company Bank show that on January 11, 1923, and January 13, 1923, the sum of $3,000.00 and $1,000.00, respectively, was withdrawn from the account of the Plaintiff, Mrs. Edith Cross, in the Amoretti-Welty-Helmer Company Bank, by E. B. Helmer, who at that time made out the debit slips, Plaintiff's Exhibits 5 and 6, and mailed them to Mrs. Edith Cross; that said books show that on the same day said E. B. Helmer placed the said $3,000.00 to the credit of E. B. Helmer, special account in said bank, and there is no further record of the $1,000.00; that the books of the bank show that no part of said $4,000.00 was ever credited to the bank or to its general fund; that subsequent to January, 1923, and on June 23rd, 1923, December 28th, 1923, and periodically thereafter at six months intervals, to and including June 22nd, 1927, the sum of $160.00 was paid from the E. B. Helmer special account in said Amoretti-Welty-Helmer & Company Bank, which was interest on the said $4,000.00 at 8 per cent, and was credited to Plaintiff, Mrs. Edith Cross' account in said bank; that said bank on January 11th, 12th and 13th, 1923, had on deposit in various other banks a sum in excess of $35,000.00."

According to plaintiff's testimony all the dealings were with Helmer and with no other member of the partnership.

The court rendered judgment for the plaintiff, from which an appeal has been taken. Numerous errors are assigned, among which are that the judgment is contrary to the evidence, and contrary to law, and that the court erred in admitting plaintiff's account books in evidence. We have not been favored with a brief on behalf of the plaintiff.

1. It is contended by appellants that the transactions here shown were private transactions between the plaintiff and Helmer, and not transactions with the bank or the partnership. And it is argued that Helmer had no authority to bind the bank, particularly in view of the fact that, as is claimed to be indicated by the evidence, the transactions were for his individual interest and not that of the bank. While not necessary for the disposition of this case, it may

be well, in order to prevent misapprehension in the future, to call attention to the fact that counsel have evidently overlooked some well settled principles of law. In the first place, it must be remembered that the authority of one who holds a dominant position in a bank, as Helmer did in the case at bar, cannot be judged by the same standard as in other cases. That was pointed out by this court in the case of Commercial Bank and Trust Co. v. Hauf, 32 Wyo. 127, 230 Pac. 539, where many authorities are cited, and where it was held that knowledge of an agent is imputed to his principal notwithstanding the fact that the agent is acting adversely to his principal, where the agent is the sole acting representative of the principal in the transaction.

Now a bank has authority to borrow money. Lander State Bank v. Nottingham, 37 Wyo. 50, 259 Pac. 181, 7 C. J. 592, 3 R. C. L. 450. The case of Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470, cited to us, was very much modified, if not entirely repudiated, by later decisions, as pointed out in Lander State Bank v. Putnam, 40 Wyo. 312, 276 Pac. 926. Helmer was the cashier, general manager and sole representative of the bank and of the partnership, and he had, under these circumstances at least, the right to represent the bank in borrowing money. 4 Mitchie, Banks and Banking, p. 133. And if it were shown herein by competent evidence that Helmer assumed to act for the bank in borrowing money for it, the fact that the money was misapplied by Helmer, either considered as agent of the bank, or as a partner, would not abridge the right of a lender in good faith to hold the bank. 14a C. J. 449; 47 C. J. 865; Citizen's Bank v. Receiver, 126 Ky. 169, 31 Ky. L. 365, 103 S. W. 249, 11 L. R. A. N. S. 598 and note. In State Bank v. Bank, 118 N. Y. S. 641, 645, it was said:

"A cashier of a bank has, as incident to his office, implied authority to borrow money for it, and, in the absence of any statutory restraint, to secure the loan by pledge of its property or funds, and as against third persons the as-

sumption of such authority by the cashier will conclude the bank. Coats v. Donnell, 94 N. Y. 168. The court in that case said:

'The cashier of a bank is its executive officer, and it is well settled that as incident to his office he has authority, implied from his official designation as cashier, to borrow money for, and to bind the bank for its repayment, and the assumption of such authority by the cashier will conclude the bank, as against third persons who have no notice of his want of authority in the particular transaction and deal with him upon the basis of its existence,'—citing Curtis v. Leavitt, 15 N. Y. 9; Barnes v. Ontario Bank, 19 N. Y. 152.''

And if plaintiff gave authority to Helmer to draw on her account for a loan to the bank, and for no other purpose, then he could not exceed that authority, draw out the money for another purpose, loan the money to himself, and thereby relieve the bank. Verrell v. Bank, 80 Or. 550, 157 Pac. 813; Haines v. Bank, 89 Or. 42, 172 Pac. 505; see also First Nat. Bank v. Peck, 180 Ind. 649, 103 N. E. 643; L'Herbette v. Bank, 162 Mass. 137, 38 N. E. 368, 44 A. S. R. 354; Hansen v. Heard, 69 N. H. 190, 38 Atl. 788; Wassman v. Bank, (C. C. A.) 52 Fed. (2d) 705.

Of course, as already indicated, it was not within the actual scope of Helmer's authority to borrow money in the name of the bank, or partnership, for his private purposes, and plaintiff had no right to rely on the *apparent* scope of his authority if she knew that such was Helmer's purpose. 47 C. J. 865; Mitchie, supra, 4 p. 284. In other words, plaintiff was required to be in good faith. We are not prepared, however, to hold, at this time at least, though the transaction was carried on in a rather unusual manner, and plaintiff had nothing to show except her account and the debit slips, and while undoubtedly a circumstance to be taken into consideration in determining whether the loan was for the bank, or for some other purpose, that this fact would be necessarily determinative of the question. See Byron v. Bank, 75 Or. 296, 146 Pac. 516. Hence the case

must be decided on grounds other than the contentions of counsel above stated.

2. The action herein is for the recovery of loans to the bank—not for the recovery of a deposit, but of commercial loans, for deposits and commercial loans are distinguishable. 1 Mitchie, supra, p. 151. The transactions on which the action is based are those of January, 1923. Unfortunately for plaintiff, she was confronted, at the trial, on account of Helmer's death, with the provisions of sub. 5, Section 89-1704, Rev. Stat. Wyo. 1931, reading as follows:

"In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since deceased; unless the same were made in the presence of the surviving partner or joint contractor; and this rule shall be applied without regard to the character in which the parties sue or are sued."

The next subdivision provides that a party may testify to a book-account, though the other party may be deceased.

Objections were made at the trial to the plaintiff testifying, on the ground of the provisions of sub. 5 of the statute above quoted. The objections were overruled. Notwithstanding that, however, the court, according to the record, disregarded plaintiff's testimony, considered as in violation of the statute, and decided the case on the ground that the books of plaintiff introduced in evidence established her case. In view of the attitude of the court on the question of plaintiff's competency as a witness, which seems not to have been questioned by counsel for the plaintiff, and particularly since we are not satisfied, at this time at least, that this attitude was wrong, it is, perhaps, not necessary or proper to pass upon the effect of the statute quoted, and we shall simply assume that plaintiff could not testify to any transaction or to any conversations with Helmer, and that she could not evade the statute by testifying that she transacted business with the "bank," when in fact it was Helmer,

whether individually or as representative, with whom she dealt. The statute was fully discussed, and many authorities were cited, in Stephens v. Short, 41 Wyo. 324, 285 Pac. 797. See also Buchan v. Bolte, 129 Kans. 747, 284 Pac. 374; Jackson v. Ely, 57 O. S. 450, 49 N. E. 792; Mehlisch v. Mabie, 180 Iowa 450, 160 N. W. 368; Whisler v. Whisler, 117 Iowa 712, 89 N. W. 1110. We shall accordingly proceed to determine whether, disregarding plaintiff's testimony as above indicated, there is sufficient evidence in the record to show the contract sued on.

The debit slips of January 11 and 13, 1923, introduced by plaintiff in evidence, do not shed much light on the subject. The only definite thing which they establish is that the amounts mentioned therein were charged to the plaintiff's account. The words "investment funds" stated thereon would seem to indicate that the money was to be used for investment, but the character thereof, or to whom the money was to be loaned, is not in any way indicated. The books of the bank corroborate the debit slips that the amounts were charged against plaintiff's account, but do not indicate the purpose. The credit to Helmer of $3000.00 on January 11, 1923, does not indicate a loan to the bank, but rather the contrary. Nor is the plaintiff's pass book—bank book—of much help. The items of interest of $160.00 each, there shown, undoubtedly indicate that plaintiff had outstanding a credit or loan of some kind, on which they were paid. But they show neither the principal amount of the credit or loan, nor who was the debtor. The mere fact that they were shown on the pass book, would not show a loan to the bank, since the items might have been deposited in favor of plaintiff by many other persons. In fact, interest was so credited to her account in the bank, which, according to plaintiff's own testimony, was paid in by other parties.

Plaintiff's day book, showing interest items paid, in some instances indicate that these items were paid by the bank, in other instances that they were derived from a loan to

some outsider. So we come to the main evidence relied on, namely, the items, shown in the day book and ledger, by which the partnership was charged with $3000 on January 11, 1923, and with $1000 two days later. Appellants claim that the books were improperly admitted to show these charges, and that would seem to be the main question herein.

This court, in Lewis v. England, 14 Wyo. 128, 540, 82 Pac. 869, 85 Pac. 1049, 2 L. R. A. (N. S.) 401, said that "where cash entries appear in the general course of accounts, as a part of the regular course of business transacted" the entries should be admitted as competent evidence. In that case the books of a saloon keeper were in question. He had charged on his books, among other items, various small sums of money, the largest apparently being $60, and the books were held to be competent to show these payments. It is probable that the court intended to confine its holding to the facts as presented in that case, namely, that payments of small amounts, paid out in the regular course of business, can be shown by a book account. Such holding is in accord with a number of other decisions. But we do not think that the case can be regarded as authority in holding that large loans, such as are involved in the case at bar, may be thus shown, particularly when, as here, they involve two isolated transactions. In a few states there are statutes providing that account-books may be used to show payments or loans of money. We have no such statute, and must look to the common law, as interpreted by the courts. At common law, it seems, money lent or paid out was not a proper subject of book-accounts. Exceptions have been made by some of the courts, as where the amounts involved are small (without setting a definite limit), or where they are made by bankers or agents in the regular course of their business. Note 2 L. R. A. N. S. 401. In Chamberlayne, Modern Law of Evidence, Sec. 3116, it is said:

"The general rule, as sustained by the great majority of the cases is to the effect that a party's books of account are not admissible to prove a loan or cash payment in his favor.

In such cases the shop book is not the primary or 'best evidence' of the fact to be proved. It is within the power of the party at the time of making the loan or payment to require that some receipt or other memorandum be given to him.''

In note to 2 L. R. A. N. S. page 401, it is said:

''It is usually held, in the absence of express statutory provision to the contrary, that the rule that books of account kept in the ordinary course of business are admissible in favor of the person keeping them has no application to cases of money loaned, or payments made, by the party whose books are offered.''

Wigmore, on Evidence, Sections 1539 and 1549, states the rule as follows:

''On the same principle of necessity, it was usually held that entries of cash payment or loans could not be used, because notes or receipts would have been or ought to have been taken and thus other evidence would be extant. * * * The better opinion is that while as a general rule such entries are not to be regarded as admissible, yet in particular cases the ordinary course of business may involve cash entries and they may then be used.''

See also 2 C. J. 878-9; 10 R. C. L. p. 1187.

The question came before the Ohio Court in the case of Cram v. Spear, 8 Ohio 494, in which the court said among other things:

''Money, especially if of any considerable amount, is not the proper subject of book account; still if, in the course of business, small sums are passing between the parties, these may with propriety be charged on book, and proved in the same manner as the other items of the account.''

In that case there were seven debit charges against the deceased, three of which were for cash for $400, $275, and $12.50 respectively. Plaintiff offered to take an oath as to

the regularity of these entries. The court, in holding that he should not be permitted to do so, says:

"It could not have been the intention of the legislature to make any change in the business of the country, or to authorize charges to be made upon book for things which are not properly the subject of book accounts; and if any person shall make such charges upon his book, with a view to sustain them by his own oath, it can be viewed in no other light than as an attempted fraud upon the law. Money lent or paid is not ordinarily charged upon book. The person lending or paying usually takes a note or receipt. An individual, it is true, might be engaged in a business that would seem to justify such charges; and in such case, I am not prepared to say that he might not be examined as a witness. Whether he might or not, it is not now necessary to determine. The case before the court is not one of that character. Here an account was exhibited, consisting of seven separate items, amounting in the whole to $872.50. Of this amount $687.50 was contained in three separate charges for cash. It was proposed to prove this part of the account, and this alone, by the oath of the party. In the opinion of the court, it could not have been the intention of the legislature to admit this kind of testimony in such a case. And we believe that the construction heretofore given the statute upon the circuit is correct, and are not disposed to depart from it."

This rule, so far as we know, has been adhered to in Ohio ever since, and in Page v. Ballard, 6 Week. L. Bull. 299, it was held that a loan of $450 could not be shown by account books.

In Galbraith v. Starks, 117 Ky. 915, 79 S. W. 1191; Proctor v. Adm'r., 118 Ky. 474, 81 S. W. 272, and Clark v. Clark, 122 Ky. 145, 91 S. W. 284, the court had occasion to construe a statute similar to subdivision 6 above mentioned, which allows book-accounts to be used in case one of the parties is deceased, and it was held that the account books admissible were those admitted at common law, with the addition that a party in interest may testify concerning such entries, even against one who is dead. In the Clark case it

was held that books showing three loans of $100 each, one loan for $150, and one loan for $50, could not be used as evidence. The reason for the rule was thus stated in Brannin v. Adm'rs., 12 B. Mon. (Ky.) 506:

"It is received upon the presumption that, unless it be admitted, there will be a total failure of proof, and that injustice will consequently result. It is, however, but secondary evidence, and that of the lowest grade. The principle upon which it is rendered admissible, therefore, limited in its operation to that character of dealing to which the law has *prima facie* ascribed a destitution of the ordinary means of proof, viz., the daily sale and barter of merchandise and other commodities, the performance of services and letting of articles to hire, and probably the payment, from time to time, of money placed on deposit, circumstances so frequent in succession and generally so trivial in their individual amount that the procurement of formal proofs cannot be expected, and would not compensate for the time necessary for the purpose."

In the recent case of Hodgson v. Harris, (N. J.) 149 Atl. 830, 831, 8 N. J. Misc. R. 188, the reason of the rule is stated in the following language:

"In the absence of a statute expressly providing otherwise, the rule is very generally laid down that a party cannot prove by his own books of account by an entry therein the fact that he has paid out money, made in the regular course of business, of a loan to a party, or paid out money for his benefit. Inslee v. Prall, 23 N. J. Law 457; Oberg v. Breen, 50 N. J. Law 145, 12 A. 203, 7 Am. St. Rep. 779; Hauser v. Leviness, 62 N. J. Law 518, 41 A. 724. Books of account had their origin at a very early period in the necessity of things; but they are in derogation of one of the leading principles, to wit, that a party shall not be permitted to make evidence for himself. If they were proved to be books of original entry used by the party in the regular course of business, in which he made his daily entries of charge against all his customers, if they appeared to be fair on the face, and not open to suspicion or impeached for correctness, they were allowed to go to the jury as

*prima facie* evidence of the truth of the charges they contain. But books of account cannot be received in New Jersey to prove the payment of money. Nor are they evidence of money lent. The necessity of admitting them as evidence of goods sold, services rendered, and other matters in the usual course of business, for which the common-law rule has been relaxed, does not exist in case of payments or advance of money. Inslee v. Prall, supra. And therefore such items as money lent or paid on account to some one 'is not legally evidential in the plaintiff's behalf.' Hauser v. Leviness, supra.''

In the case of Smith v. Rentz, 131 N. Y. 169, 30 N. E. 54, 56, 15 L. R. A. 138, the court discussed the reason of the rule thus:

''The rule admitting account books of a party in his own favor in any case was a departure from the ordinary rule of evidence. It was founded upon a supposed necessity and was intended for cases of small traders who kept no clerks, and was confined to transactions in the ordinary course of buying and selling or the rendition of services. In these cases some protection against fraudulent entries is afforded in the publicity which, to a greater or less extent, attends the manual transfer of tangible articles of property, or the rendition of services, and the knowledge which third persons may have of the transactions to which the entries relate. But the same necessity does not exist in respect of cash transactions. They are usually evidenced by notes, or writing, or vouchers, in the hands of the party paying or advancing the money. Moreover, entries of cash transactions may be fabricated with much greater safety and with less chance of fraud being discovered than entries of goods sold or delivered, or of services rendered. It would be unwise to extend the operation of the rule admitting a party's books in evidence beyond its present limits, as would be the case, we think, if books containing cash dealings were held to be competent.''

The statements heretofore quoted that transactions in connection with loans are usually evidenced by writing, is particularly true of transactions with banks. As evidences of indebtedness, they issue pass-books, certificates of de-

posit, cashier's checks, or notes—the latter generally in connection with loans from other banks. That is a universal practice, of which the plaintiff can hardly be held to have been ignorant. American National Bank v. Bushey, 45 Mich. 135, 7 N. W. 725. She had done business with the bank, according to her testimony, from the time it started, and while a ranch woman, had made a number of loans to other people, and apparently had had quite a good deal of business experience. But she received neither form of indebtedness mentioned above, in connection with the loans which she claims she made, and we cannot see how, under the authorities, we can hold that her account books can take the place thereof. We think that these books were incompetent as evidence, to prove the loans in question, at least standing alone and in the absence of other and competent evidence reasonably identifying the bank, or partnership, which received the loan. That evidence is lacking, and the judgment must accordingly be reversed, and the cause remanded for a new trial. It is so ordered.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.