COOKSLEY, LLOYD AND CHUBB, a Partnership, Elsie H. Lloyd, personally and as a survivor of said partnership, and Amy F. Chubb, personally and as a survivor of said partnership, Appellants (Defendants below),

v.

WYOMING WOOL MARKETING ASSOCIATION, a Corporation, Appellee (Plaintiff below).

No. 3048.

Supreme Court of Wyoming.

Oct. 2, 1962.

H. B. Harden, Jr., of Harden & Harden, Casper, for appellant.

James P. Horiskey, of Hickey, Raper, Rooney & Walton, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff, acting as factor, sued defendants to recover $2,778.15, interest and costs, as the sum due plaintiff from defendants for plaintiff's overpayment by advances to defendants of amounts received by plaintiff upon its sale of defendants' wool to the Commodity Credit Corporation. The case was tried to a jury and the court instructed plaintiff had submitted undisputed evidence to entitle it as a matter of law to a judgment against defendants in the sum of $2,778.15, and interest, unless the jury found plaintiff had been negligent in disposing of defendants' wool. The jury returned a verdict in favor of the plaintiff for the full amount claimed, and judgment was accordingly entered thereon.

Defendants appeal, contending the court improperly admitted certain exhibits consisting of plaintiff's purported "book accounts"; that there had been a failure of proof authenticating certain charges and deductions made by plaintiff in its account for the sale proceeds of defendants' wool; and that the statute of limitation barred plaintiff any right of recovery.

The parties entered into an agreement dated June 8, 1951, entitled, "Marketing Agreement of the Wyoming Cooperative Wool Marketing Association," which instrument was received in evidence without objection. Its salient provisions were: De-

fendants appointed plaintiff as exclusive agent to sell a wool clip of the defendants and agreed plaintiff might use the services of National Wool Marketing Corporation in carrying out its agency, and that plaintiff might deduct from the sale account four mills per pound for certain membership fees. Plaintiff agreed to sell the wool; agreed to pay defendants the amount received from the sale less deductions that might be made by plaintiff and the National Wool Marketing Corporation to cover advances, interest upon advances, cost of transportation, and other charges for handling and marketing such wool, and for organization purposes also the sum of twenty-five cents for one annual subscription to the official publication of the National Wool Marketing Corporation, the "National Wool Clip"; and agreed that the deductions of the plaintiff and the National Wool Marketing Corporation for their *services* would be "that made permissable [sic] by the agreement between the Commodity Credit Corporation and the Primary handler [plaintiff]".

Thereafter on June 22, 1952, a further instrument signed only by the defendants and entitled, "Marketing Agreement and Producer's Designation of the Wyoming Cooperative Wool Marketing Association, a Member of the National Wool Marketing Corporation, as Handler (Shorn Wool) under the 1952 Wool Price Support Program" was executed. This instrument recited that defendants had delivered to plaintiff and National Wool Marketing Corporation on consignment, 28,960 pounds of shorn wool and represented there were no liens upon the wool; that this representation was made for the purpose of influencing the action of Commodity Credit Corporation and obtaining benefits under the 1952 Wool Price Support Program made available by the Commodity Credit Corporation; that defendants appointed plaintiff as defendants' representative with full authority to pledge defendants' wool as security for loans under the 1952 Wool Price Support Program, upon condition that plaintiff

" * * * shall pay to the undersigned producer [defendants], *in accordance with the 1952 Shorn Wool Handler's Agreement between the Handler and CCC,* the full net proceeds received from CCC with respect to such wool under the 1952 Wool Price Support Program. *No charges shall be deducted by the Handler from proceeds received from CCC, other than those specified in the 1952 Shorn Wool Handler's Agreement,* except as follows:

"a. The amount of any advance made by the Association to the undersigned producer and accrued charges which are unpaid." (Emphasis supplied.)

It thus appears there are at least three instruments which must be given consideration in disposing of this case, namely, the June 8, 1951, agreement, the June 22, 1952, instrument, and the agreement between the plaintiff and the Commodity Credit Corporation which is referred to in the June 8, 1951, agreement. If however, the 1952 Shorn Wool Handler's Agreement between the handler (plaintiff) and the Commodity Credit Corporation, as mentioned in the June 22, 1952, agreement, is either a different or further agreement substituted for the last above mentioned agreement, it also must be considered. In any event, there are present in the record only two of these agreements, and there is absent from the record any agreement which sets forth the items, or their value, which were made permissible for plaintiff to deduct in its accounting with defendants.

Although the June 8, 1951, agreement specified the deductions to be made by plaintiff in its accounting with defendants, the later instrument of June 22, 1952, expressly made it a condition that *no* charges should be deducted by the plaintiff from proceeds received from the Commodity Credit Corporation other than those specified in the "1952 Shorn Wool Handler's Agreement," the amount of any advances

made by plaintiff to defendants, and *accrued charges* remaining unpaid.

■ It behooved plaintiff to prove by competent evidence that the deductions it claimed were within the category of plaintiff's services made permissible by plaintiff's agreement with the Commodity Credit Corporation, whether as originally made or as it might have later been altered. Instead of producing that agreement, plaintiff contented itself by placing in evidence, over defendants' objection, its purported book accounts of transactions with and in defendants' behalf.

The question posed in this appeal is whether the challenged book accounts were competent and sufficient evidence to prove that the items and the amounts listed as deductions were those made permissible under the provisions of the June 8, 1951, agreement as it might be affected by the June 22, 1952, instrument. Without the agreement between plaintiff and the Commodity Credit Corporation being in evidence, it is impossible to say just what services were to be included as authorized deductions or what was their value.

■ Although courts have differed largely respecting under what various circumstances book accounts may be admissible in evidence, as well as for what purposes they may be considered as evidence when admitted, they generally do not lose sight of the fact that such evidence is self-serving, merely hearsay, and their admission presents the danger of opening the door to fraud. Notwithstanding these valid objections to the admission of such evidence, and in order to prevent miscarriage of justice due to lack of any other means of establishing a just claim arising from transactions occurring in the regular course of trade and business, and as a matter of necessity only, book accounts have sometimes been received in evidence when properly authenticated. But where, as in the case before us, the question of the *right* to make deductions must first be established, and that right has been by contract limited to items referred to in the contract as being

set forth in a certain agreement between plaintiff and the Commodity Credit Corporation, there was no lack of means to establish plaintiff's right to make authorized deductions. Until the definitive agreement was placed in evidence or otherwise proved, the right to make any deductions remained unauthorized, and that lack of evidence could not be overcome by the production of plaintiff's book accounts. In 5 Wigmore on Evidence, 3d Ed., § 1541, p. 398, it is pointed out that book entries cannot be used where there is a contract between the parties, and in Crew Levick Co. v. Gibbon, 115 Pa.Super. 595, 176 A. 27, 28, the court held that where there was a special agreement, plaintiff could not rely upon the presumptions attached to books of original entry. Citing the Crew Levick case with approval, the court in Solar Electric Corp. v. Exterminator Corp. of America, 384 Pa. 233, 120 A.2d 533, 535, said such accounts were not admissible where there is a special agreement taking the transaction out of the usual course of buying and selling. To the same effect is Edsall v. Rockland Paper Co., 8 W.W.Harr. 495, 38 Del. 495, 194 A. 115, 118, and the court notices the danger of fraud. In 20 Am.Jur., Evidence, § 1213, p. 1065, the text comments:

> " * * * The admission of books of account is a violation of one of the first principles of the law of evidence, which is that a party shall not himself make evidence in his own favor, and books of account should be received and used as evidence with caution. * * *"

Caution alone might well have rejected these exhibits, but where the major issue was plaintiff's *right* to make its claimed deductions and that right was agreed to encompass only such deductions as were set forth in an agreement between plaintiff and the Commodity Credit Corporation, the need to resort to evidence of book accounts was entirely absent.

Plaintiff-appellee says:

> " * * * If the agreement had been put into evidence it would only indicate what charges were 'permissible' and

would shed no light whatever on what charges were actually made for the poundage, storage, etc. * * *."

But without the agreement being in evidence, there can only be speculation as to what it would show. As far as we know, the agreement might show both the items of services made permissible as deductions, as well as their value.

Even if we were to assume the agreement would not show the prices to be charged, or the value of the specified services to be deducted, it would still have been necessary for plaintiff to prove these matters by competent evidence.

It is not made clear whether the deducted storage charges shown on the exhibit were for plaintiff's services or were for reimbursement for payments made by plaintiff. If the latter, there is entirely lacking any proof that plaintiff paid the storage charges. Proof could easily have been made by production in evidence of receipted bills. The same is true with respect to warehouse handling charge, and the amount deducted for freight charges. If these items had been paid by plaintiff, that fact might easily have been established by production of receipted bill for such charges. None of these evidences of the correctness of the deductions made were offered in evidence.

■ The criticized exhibits were completely self-serving, incompetent, and should not have been admitted. They did not tend to prove in any way the deductions claimed were those made permissible by the agreement between plaintiff and the Commodity Credit Corporation. On the other hand, the defendants' objection to their admission, that the exhibits served to vary the terms of a written instrument not yet offered in evidence, in itself, assumed a matter not in evidence. The objection as made, however, did serve to bring to the court's attention the defendants' position that the noted agreement was the best evidence of what was authorized therein as permissible deductions. Had the agreement been produced it might have shown the deductions claimed

were at variance with those permitted by the controlling agreement, yet the agreement might have shown they conformed to it. Furthermore, defendants by interrogatory had demanded the missing agreement and plaintiff responded that the office records had been searched for a copy of the agreement, which could not be found. Notwithstanding, the trial court's pretrial order set forth:

"It is noted that the plaintiff has furnished at the request of Mr. Harden a printed copy of the contract alleged to have been in force between the national Commodity Credit Corporation, primary handler of wool under the contract involved herein, however neither Mr. Harden nor Mr. Horiskey is prepared to stipulate as to the receipt of said printed matter into evidence.

* * * * * *

"Mr. Horiskey presented four copies of charge statements covering account of sales and asked for an agreement of Mr. Harden that the same might be received in evidence. Mr. Harden was without information upon which to base an agreement and agreed that unless Mr. Horiskey was advised at least 10 days in advance of trial of Mr. Harden's unwillingness to agree to receiving of said documents in evidence without foundation proof, that foundation proof would not be necessary for the receiving of the same in evidence, subject only to objections as to materiality and relevancy."

At the trial, defendants asked for the agreement and were told plaintiff did not have it. Despite the uncertainty concerning the furnishing of the agreement to defendants, there is little doubt but that the court was adequately apprised of the importance of the missing instrument.

In any event, the offer in evidence of the purported book accounts, the objection made to their admission, and the court's admission of the accounts over that objec-

tion, bring into sharp focus the real issue in this appeal, which is: May a book account be received in evidence to establish the right to deduct certain amounts in plaintiff's accounting with defendants, when the authority to make any deductions was limited to items specified in a designated written agreement between plaintiff and the Commodity Credit Corporation?

■ Irrespective of the propriety of the admission of the book accounts, they do not serve as the substantial evidence necessary to support the jury's verdict and the court's judgment when the issue was whether the deductions claimed were made permissible under the terms of the parties' contracts. The so-called book accounts did not in any way either prove or disprove that necessary point. Consequently it may not be said that plaintiff had, in the words of the court's instruction, "submitted proof, which is undisputed, sufficient to entitle it, as a matter of law, to judgment * * *." In fact there was no evidence given the jury under which it might justly have found a verdict in plaintiff's favor. In other words, there was a failure of proof.

We feel there is no merit in appellants' contention that the claim of plaintiff is barred by the statute of limitation. No cases directly in point have been called to attention and cases cited by appellants are not analogous.

■■ Although the admission of the so-called book accounts was wrong, a proper objection to their admission was not made. Therefore, the receiving in evidence of those exhibits should not be held to constitute reversible error. Neither can those exhibits be said to be sufficient evidence to support the verdict or judgment in plaintiff's favor, because the items shown thereon were not proved to be the items specified in the agreements. This failure of plaintiff to meet its burden of proof requires the case be reversed, yet the misconception of the court in submitting the case to the jury upon an erroneous instruction should not deny plaintiff the right to have its claim decided by a jury under proper instruction from the court. This is especially true because the pretrial order may have misled plaintiff and been the reason it failed to comply with the usual requirements in proving its case. Some precedent for such a disposition is found in Cross v. Amoretti, 44 Wyo. 175, 9 P.2d 147, 84 A.L.R. 140. With this in mind we feel the case must be reversed and remanded for a new trial.

Reversed but remanded for new trial.

McINTYRE, J., not participating.